UNITED STATES DISTRICT COURT          **ECF**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
EDWARD D. FAGAN; ERI, TOMONARI,   :
NOBUKO and YOUKO DEGUCHI; HERMANN : 08 Civ. 6715 (LTS) (JCF)
GEIER; BIRGIT GÖTZ; ERWIN GÖTZ;   :
MANFRED HILTEL; MARCUS HILTEL;    :     MEMORANDUM
ETSUKO, YASUAKI and YUUKA KATONO; :    AND  ORDER
THOMAS KRAUS; ELAINE MAYERHOFER;  :
ROLAND MAYERHOFER; MARIA          :
MAYERHOFER-KARG; NANAE, MASATOSHI :
and KOSUKE MITSUMOTO; JUNKO and   :
HITOSHI NARAHARA; ETSUKO, NOBUO   :
and HIROYASU ONODERA; ASAKO, MINEO :
and CHIE OYAMA; SHIZUNO, TOMOYOSHI,:
TAKESHI and KAYO SAKAKIBARA;     :
HIDEKO, SOUJU, MOTOKO and KEIKO   :
SAZE; JOOP STADMAN; MASAKO,      :
YASUSHI, HIROKAZU, KIYOE and     :
HIROKO WAKUI; AGNES WOLF; JAMES F. :
LOWY Esq. PA and LOWY ROYER LAW   :
FIRM LLC f/k/a INTERNATIONAL LAW  :
GROUP LLC; Prof. Dr. TOICHIRO    :
KIGAWA; and Dr. GERHARD        :
PODOVSOVNIK,                :
                         :
        Plaintiffs,        :
                         :
    - against -          :
                         :
REPUBLIC OF AUSTRIA, individually  :
and as agent for its various    :
municipalities, divisions, organs, :
ministries and/or other entities  :
including but not limited to     :
Austrian Ministry of Justice,    :
Austrian Tourist Office Inc.,    :
Austrian National Tourist Office  :
Inc., Fachverband der Seilbahnen,  :
Austrian Ministry of           :
Transportation, State of Salzburg, :
Municipality of Kaprun, Europa    :
Sportregion GmbH, Salzburger Land  :
Tourismus Gmbh, Oesterreich     :
Werbung, Austrian Trade Commission,:
Austrian Ministry of Economics and :
Labor, Vermittlungskommission    :
Brandkatastrophe Kaprun a/k/a The  :
Kaprun Commission; GLETSCHERBAHNEN :
KAPRUN AG; ÖSTERREICHISCHE     :
ELEKTRIZITÄTSWIRTSCHAFTS-AG;     :

GENERALI VERSICHERUNG AG; UNITED     :
STATES DISTRICT COURT FOR SOUTHERN   :
DISTRICT OF NEW YORK, individually   :
and as custodian of records of       :
Hon. Shira A. Scheindlin USDJ,       :
Beton-und Monierbau G.m.b.H. d/b/a   :
Heitkamp Inc., E. Heitkamp GmbH,     :
and Heitkamp-Deilmanhaniel GmbH;     :
BOSCH REXROTH AG; BOSCH REXROTH      :
CORPORATION d/b/a and/or its/their   :
entities including REXROTH           :
CORPORATION INDUSTRIAL HYDRAULICS     :
DIVISION, ROBERT BOSCH CORP., THE    :
BOSCH GROUP, ROBERT BOSCH GMBH,      :
ROBERT BOSCH AG, BOSCH REXROTH       :
PNEUMATICS, BOSCH REXROTH MOBILE     :
HYDRAULICS, BOSCH REXROTH            :
CORPORATION HYDRAULICS DIVISION,     :
MANNESMAN REXROTH CORPORATION, and   :
REXROTH BOSCH GROUP; CYALUME         :
TECHNOLOGIES INC. individually as    :
successor to Omniglow Corporation;   :
EXXON MOBIL CORPORATION; HYDAC       :
INTERNATIONAL AG d/b/a HYDAC         :
TECHNOLOGY CORP. and HYDAC           :
CORPORATION; INTERSPORT             :
INTERNATIONAL CORPORATION, d/b/a     :
INTERSPORT AUSTRIA GMBH and          :
INTERSPORT MARKETING USA INC.;       :
SIEMENS AG OESTERREICH and SIEMENS   :
AG, d/b/a SIEMENS CORPORATION,       :
SIEMENS PSE (PSC) TECHLABS, SIEMENS: 
TRANSPORTATION SYSTEMS CORP.,        :
SIEMENS TRANSPORTATION SYSTEMS       :
GMBH & CO KG, and SIEMENS SHARED     :
SYSTEMS; SWOBODA KAROSSERIE AG       :
d/b/a BAUBEDARFS-ZENTRUM STADLBAUER: 
AG and SWOBODA KAROSSERIE UN         :
STAHLBAU GMBH; THYSSENKRUPP AG and : 
THYSSEN SCHACTBAU GMBH; TUV          :
INTERNATIONAL d/b/a RHEINLAND        :
HOLDING AG, TUV RHEINLAND OF NORTH : 
AMERICA INC., TUV INTERNATIONAL      :
GMBH, TUV OSTERREICH, TUV RHEINLAND: 
GMBH, and TUV CONSULT                :
OESTERREICH-RHEINLAND GMBH; VA       :
TECH d/b/a VA TECH ELIN EBG, VA      :
TECH HYDRO AG, VA TECHNOLOGIE, VA    :
TECH ELIN USA CORPORATION, VA TECH : 
AMERICAN CORPORATION, and            :
VOEST-ALPINE SERVICES & TECHNOLOGY : 
CORP.; VERBUND-AUSTRIAN HYDRO        :

2

```
POWER AG and TAUERN TOURISTIK    :
GMBH; WAAGNER-BIRO BINDER AG IN  :
ABWICKLUNG d/b/a WAAGNER-BIRO    :
BINDER BETEILIGUNGS AG and WB    :
HOLDING AG, and BINDER + CO AG;  :
WESTINGHOUSE ELECTRIC COMPANY;   :
WYETH as success to American     :
Cyanamid Corporation; WIKA       :
INSTRUMENTS AG d/b/a WIKA        :
INSTRUMENT CORPORATION and WIKA  :
ALEXANDER WIEGAND GMBH & CO KG,  :
                                 :
              Defendants.        :
- - - - - - - - - - - - - - - - -:
```

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

This case involves disputes arising from a prior litigation in this court, <u>In re Ski Train Fire in Kaprun Austria on November 11, 2000</u>, 01 MDL 1428. That case (the "<u>Kaprun</u> case") involved claims stemming from a train fire on November 11, 2000 in Kaprun, Austria that killed 155 people. It was eventually dismissed on <u>forum non conveniens</u> grounds, <u>In re Ski Train Fire in Kaprun Austria on November 11, 2000</u>, 499 F. Supp. 2d 437, 439-40, 452 (S.D.N.Y. 2007), and an appeal of the dismissal remains pending. (Notice of Appeal dated Aug. 28, 2008; Second Amended Notice of Appeal dated Oct. 2, 2008; Notice of Appeal and Motion by Japanese Victim Families dated Oct. 15, 2008; Notice of Appeal dated May 6, 2009).

Most of the plaintiffs in the current case include German, Japanese, and Dutch nationals who are either survivors of the train disaster or are relatives of the victims.[1]  Plaintiffs in the

_____

[1] These individuals include Eri, Tomonari, Nobuko and Youko Deguchi; Hermann Geier; Birgit Gotz; Erwin Gotz; Manfred Hiltel; Marcus Hiltel; Etsuko, Yasuaki, and Yuuka Katono; Thomas Kraus; Elaine Mayerhofer; Roland Mayerhofer; Maria Mayerhofer-Karg; Nanae, Masatoshi and Kosuke Mitsumoto; Junko and Hitoshi Narahara; Etsuko, Nobuo, and Hiroyasu Onodera; Asako, Mineo, and Chie Oyama; Shizuno,

current case also include James F. Lowy and Edward D. Fagan, attorneys who represented plaintiffs in the Kaprun case,[2] and Mr. Lowy's law firm, Lowy Royer Law Firm LLC.[3] (FAC, ¶ 26). Mr. Fagan is appearing pro se; all other plaintiffs are represented by Mr. Lowy and by Robert J. Pearl.

In the current case, the plaintiffs allege that various forms of misconduct by the defendants and by the district court in the prior action warrant a host of monetary and non-monetary remedies. Many of the defendants (the "moving defendants") now move for a stay of the proceedings in this case "pending resolution of the appeal from the District Court's June 17, 2007 forum non conveniens dismissal order."[4] (Notice of Motion to Stay Proceedings dated March 18, 2009 ("Stay Notice") at 1). They also request that the case be stayed until Mr. Fagan pays fines and sanctions that were

_____

Tomoyoshi, Takeshi, and Kayo Sakakibara; Hideko, Souju, Motoko, and Keiko Saze; Joop Stadman; Masako, Yasushi, Hirokazu, Kiyoe, and Hiroko Wakui; and Agnes Wolf. (First Amended Complaint ("FAC") at 1, ¶¶ 5-28).

[2] Mr. Fagan, who is now disbarred, served as plaintiffs' counsel for much of the prior case. (FAC, ¶ 5). Mr. Lowy worked for Mr. Fagan in the that case, and represents all plaintiffs other than Mr. Fagan in the current case. (FAC, ¶ 26).

[3] Dr. Toichiro Kigawa and Dr. Gerhard Podovsovnik, two gentlemen with ambiguous ties to Mr. Lowy and Mr. Fagan, are also named as plaintiffs. They allegedly worked for Mr. Fagan previously and currently work for Mr. Lowy; it is unclear whether they are attorneys or some other type of professional. (FAC, ¶¶ 27-28).

[4] More specifically, the current motion is made by defendants Exxon Mobil Corporation; Hydac Technology Corp., sued here as Hydac International AG d/b/a/ Hydac Technology Corp. and Hydac Corporation; Cyalume Technologies Inc., as successor to Omniglow Corporation; Siemens Corporation; Wika Instruments Corporation; and Bosch Rexroth Corporation.

entered against him in the related litigation, until the plaintiffs
other than Mr. Fagan are represented by an attorney admitted to the
bar of the Southern District of New York, and until all plaintiffs
other than Mr. Fagan have submitted sworn statements that counsel
have been authorized to represent them.   (Stay Notice at 1-2).[5]
Mr. Fagan has cross-moved for an order denying any stay, setting a
discovery schedule, and granting other relief.   (April 8, 2009
Notice of Cross Motion by Plaintiff Edward D. Fagan ("Fagan
Notice")).   For the reasons stated below, the defendants' motion is
granted in part and denied in part, and plaintiff Fagan's cross-
motion is denied.

Background

     The Kaprun case was originally filed on January 21, 2001.
(Am. Compl. at 41).   The claims were dismissed on forum non
conveniens grounds on June 19, 2007.   In re Ski Train Fire, 499 F.
Supp. 2d at 439-40, 452.   Subsequent to that dismissal, most
plaintiffs settled their claims.   (Opinion dated Aug. 1, 2008,
attached as Exh. 2 to Declaration of Plaintiff Edward D. Fagan
dated April 8, 2009 ("Fagan Decl."), at 1).   The dismissal is now
on appeal before the Second Circuit and the parties are awaiting a
decision.

     A. History of the Kaprun Case

     The Kaprun case was a large and complex litigation that was
assigned to the Honorable Shira A. Scheindlin, U.S.D.J.   According

---

     [5] I previously granted the moving defendants' request for a
temporary stay pending resolution of the balance of their motion
for a stay.   (Memorandum Endorsement dated March 19, 2009).

to the plaintiffs in the current action, the <u>Kaprun</u> case was fraught with numerous instances of misconduct by both the defendants and Judge Scheindlin.  They argue that the defendants made misrepresentations to the court on a variety of matters, such as the status of the Austrian proceedings related to the disaster; the jurisdiction of the Austrian courts and the plaintiffs' ability to prosecute their claims in Austria; the purpose, authority, and capabilities of the "Kaprun Commission" that had been set up in Austria; and the contents of the settlement to which some plaintiffs eventually agreed.  (<u>See, e.g.</u>, FAC, ¶¶ 105-108).  The plaintiffs also allege that the defendants destroyed evidence relevant to the case despite specific instructions by the court to the contrary and forced certain plaintiffs into settlement through duress and fraud.  (<u>See, e.g.</u>, FAC, ¶¶ 109-111, 208-211, 225-227). Moreover, the plaintiffs maintain that the defendants failed to implement the settlement agreement properly and failed to ensure that Mr. Fagan and his associates were paid the attorneys' fees and expenses due to them from that settlement.  (<u>See, e.g.</u>, FAC, ¶¶ 373-448). Indeed, the plaintiffs generally accuse the defendants of seeking to destroy their claims and interfere with Mr. Fagan's ability to represent them.  (<u>See, e.g.</u>, FAC, ¶ 118).

The plaintiffs also accuse Judge Scheindlin of being biased against them and of violating the rules of judicial conduct in overseeing the case.  On August 16, 2007, she disqualified Mr. Fagan from serving as an attorney in the <u>Kaprun</u> case.  He had entered personal bankruptcy, and Judge Scheindlin found that his

6

particular situation created an "impermissible conflict of interest" with his clients. <u>In re Ski Train Fire in Kaprun Austria on November 11, 2000</u>, 01 MDL No. 1328, 2007 WL 2398697, at *3-4 (S.D.N.Y. Aug. 16, 2007). She determined that this conflict of interest, along with his failure to file his federal income tax returns for seven years, showed such extreme financial irresponsibility that it "severely undermines this Court's confidence in his ability to adequately represent" his clients.[6] <u>Id.</u> at *2, *3-4. At the same time, Judge Scheindlin imposed a $5,000 sanction plus an award of fees and costs against Mr. Fagan for "utter disregard for ethical standards of conduct" and "misrepresent[ing] critical facts" related to two "whistleblower" witnesses –- namely, representing that the witnesses knew certain information when they in fact did not. <u>Id.</u> at *3-5, *6-7 (quotation marks omitted). She found that these claims were made in bad faith and in "utter disregard for the Court." <u>Id.</u> at *7. Judge Scheindlin later determined that the fees and costs for which Mr. Fagan was liable amounted to $44,797.56. (Order in 01 MDL 1428 dated Nov. 26, 2007 at 4). Thereafter, Judge Scheindlin ordered Mr. Fagan's clients to either find new counsel within thirty days or notify the court within sixty days of their intent to proceed <u>pro se</u>. <u>Id.</u> at *8. The parties failed to do either, and all

---

[6] Judge Scheindlin also referred Mr. Fagan to the Court's Disciplinary Committee for the tax-related conduct. <u>Id.</u> at *4 n.39.

pending motions were dismissed.[7]  (Order in 01 MDL No. 1428 dated Oct. 18, 2007).

The plaintiffs in the current case allege that Judge Scheindlin's decisions were improper and based in part on her animus against Mr. Fagan.  (FAC, ¶¶ 233, 260, 268, 274).  The plaintiffs contend that her chambers did extrajudicial research and conducted ex parte communications in an effort to be rid of the case.  (FAC, ¶¶ 234, 246, 250, 257, 264-267, 269, 271, 275).  The plaintiffs also generally maintain that the court managed the case poorly by failing to file or docket various documents and refusing to rule on many of Mr. Fagan's motions.  (FAC, ¶¶ 237, 239, 246, 261-62, 270-271).

After Mr. Fagan was disqualified from and sanctioned in the Kaprun case, he was disbarred for similar conduct in a prior litigation.  On December 11, 2008, the New York State Supreme Court, Appellate Division, disbarred him for making misrepresentations that were "dishonest and prejudicial to the administration of justice" before the Honorable Shirley Wohl Kram while litigating Association of Holocaust Victims for Restitution of Artwork and Masterpieces v. Bank Austria Creditanstalt AG, No. 04 Civ. 3600.  In re Edward D. Fagan, 58 A.D.3d 260, 266, 869 N.Y.S.2d 417, 421 (1st Dep't 2008).  The Appellate Division also cited Mr. Fagan's "pattern of prior sanctions for unprofessional

---

[7]     The case had already been dismissed on forum non conveniens grounds, but motions to reconsider and other motions were still pending.  (Order in 01 MDL No. 1428 dated Oct. 24, 2007).

conduct, his failure to pay sanctions and fees imposed, and lack of contrition or acknowledgment of wrongdoing" as reasons he was "unfit to practice law."  Id. (citation omitted)

    B. History of the Current Case

    Mr. Fagan brought the current case on his own behalf on July 28, 2008.  Since then, a First Amended Complaint has been submitted, incorporating all the other plaintiffs and their claims. (Complaint dated July 28, 2008; FAC).  Advancing 19 different claims, the FAC requests the following relief:  (1) compensatory and punitive damages, (2) an order voiding the forum non conveniens dismissal and reinstating those claims, (3) nullification of the settlement agreement between some of the plaintiffs in the Kaprun case and the defendants, (4) sanctions against the defendants for various conduct, including spoliation, in the Kaprun case, (5) production of documents from the court file in the prior case and a finding that that court acted improperly, (6) reversal of all decisions against Mr. Fagan in the prior case, including the awarding of sanctions and fines and Mr. Fagan's disqualification from the case, (7) recovery of fees and expenses allegedly due to Mr. Fagan, Mr. Lowy, Dr. Kigawa, and Dr. Podovsovnik for work done on behalf of those plaintiffs who settled in the Kaprun case, and (8) any other appropriate relief.  T h e defendants Exxon Mobil Corporation, Hydac Technology Corp., Cyalume Technologies Inc., Siemens Corporation, Wika Instruments Corporation, and Bosch Rexroth Corporation now move to stay these proceedings.  The plaintiffs oppose this motion, and Mr. Fagan has

also cross-moved for discovery and other relief to move the case forward.[8]

Discussion

    A.  Stay Pending Appeal

    It is long settled that courts have discretion to stay their cases, as "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its own docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. North American Co., 299 U.S. 248, 254 (1936).  This authority is not limited to cases involving identical parties or issues.  Id. at 254-55.  Courts may stay proceedings in a number of situations, include when a higher court is about to decide a pertinent issue of law.  Id. at 254-55; Wing Shing Products (BVI) Ltd. v. Simatelex Manufactory Co., No. 01 Civ. 1044, 2005 WL 912184, at *2 (S.D.N.Y. April 19, 2005) (citing In re Literary Works in Electronic Databases Copyright Litigation, No. M-21-90, MDL No. 1379, 2001 WL 204212, at *2 (S.D.N.Y. March 1, 2001) (finding courts often grant stays when "a higher court is close to settling an important issue of law bearing on the action")).  Court generally consider five factors in determining whether to stay a proceeding, including:

---

    [8] In general, courts read a pro se litigant's pleadings liberally, interpreting them "to raise the strongest arguments that they suggest."  McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).  However, when a pro se plaintiff is an experienced attorney like Mr. Fagan, "the Court is not obligated to read his pleadings liberally."  Heller v. Emanuel, No. 07 Civ. 1393, 2007 WL 1491081, at *2 (E.D.N.Y. May 21, 2007) (collecting cases).

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

In re Literary Works, 2001 WL 204212, at *2 (quoting Kappel v. Comfort, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)).

In this case, a number of claims in the complaint are intimately connected to claims currently on appeal before the Second Circuit.  Most obviously, in Counts 6 and 7 of First Amended Complaint the plaintiffs ask the court to void the forum non conveniens order in the Kaprun case and reinstate the claims dismissed under that order.  (FAC, ¶¶ 310-326).  That, of course, is the precise issue on appeal; if the Court of Appeals reverses the district court's decision, these counts would be moot. Moreover, the validity of the settlement agreement and the actions that the appellants claim render the settlement agreement invalid have also arisen as issues in the appeal.  (Appellants' Brief dated Dec. 24, 2008, attached as Exh. 1 to Declaration of Brant W. Bishop dated April 20, 2009 ("Bishop Decl."); Plaintiff-Appellants' Reply Brief, attached as Exh. 2 to Bishop Decl.).  Likewise, in the case at hand, the settlement agreement's validity, including allegations that the defendants procured the agreement by fraud, and the fees and expenses allegedly due under the settlement are vital components of Counts 11 through 19.  (FAC, ¶¶ 341-448).  Since an appellate ruling may determine the validity or content of the settlement, or the jurisdiction under which it should be enforced,

staying these counts is also proper.

While the remaining counts may not address directly the precise issues on appeal, the claims in both this case and the case on appeal are based on the same events.  The factual background presented in the plaintiffs' First Amended Complaint in this case merely outlines the incident underlying the <u>Kaprun</u> case and details its procedural history.  It is possible that the Second Circuit's ruling will interpret facts or mixed questions of fact and law in a way that will affect this court's evaluation of any or all of the claims in the current case.  Thus, in the interest of judicial economy it is prudent to stay all aspects of this case until the appeal is decided.[9]

Furthermore, the plaintiffs here have not presented any case law that would militate against a stay.  Rather, they protest that

---

[9] Mr. Fagan opposes the stay on the grounds that it will harm him by delaying his recovery of "hundreds of thousands to millions of dollars in fees and . . . expenses" from the prior case. (Fagan Decl., ¶ 5).  While it is theoretically possible that Mr. Fagan's claim might succeed, his prospects for recovering fees, expenses, and damages seem speculative, and thus the interest of judicial economy outweighs the possibility of delayed recovery in this case. Mr. Fagan also argues that a stay will harm him by delaying his opportunity to secure and present evidence in the current case. (Fagan Decl., ¶¶ 6-8).  To be sure, evidence may be compromised by delay; witnesses may die and records may not be preserved. However, Mr. Fagan seems to assert that most of this new evidence has already been collected, and he is merely awaiting the opportunity to present it to the court.  The evidence he specifically identifies includes criminal complaints filed in Austria in 2008 and other documentary evidence. (Fagan Decl., ¶¶ 6-8).  While some of this evidence is connected to allegations of past spoliation, Mr. Fagan does not cite any threat of future destruction. (Fagan Decl., ¶¶ 6-8).  In addition, even if Mr. Fagan is concerned about a stay impeding his efforts to collect new evidence, a stay here pending a decision by the Second Circuit is likely to be relatively brief.

any claims concerning parties or issues that differ in any way from those involved with the appeal should not be stayed.   However, courts are not so limited in granting stays pending appeal; a stay may be granted any time an expected appellate decision may be relevant to the case at hand.   Landis, 299 U.S. at 254-55; Wing Shing Products (BVI) Ltd., 2005 WL 912184, at *2.

B.   Stay Pending Payment of Fines and Sanctions

The moving defendants also argue that Mr. Fagan should not be allowed to pursue claims against them for conduct in the Kaprun case until he pays the sanctions and fines the court imposed on him in that action.   (Memorandum in Support of Motion to Stay Proceedings ("Def. Memo.") at 9-10).

Indeed, there is case law to support such a request.   In "extraordinary circumstances, such as a demonstrated history of frivolous and vexatious litigation, . . . or a failure to comply with sanctions imposed for such conduct," courts have the power to bar a party from filing pleadings, motions, or appeals.   Wrenn v. Sullivan, No. 90 Civ. 1310, 1991 WL 50083, at *3 (N.D.N.Y. April 3, 1991) (quoting Richardson Greenshields Securities, Inc. v. Lau, 825 F.2d 647, 652 (2d Cir. 1987)).   In cases where a vexatious litigant has failed to pay sanctions imposed against him, yet continues to bring appeals or new claims unabated, courts have gone beyond a stay and barred the litigant from submitting any papers of any kind in any case until the sanctions were paid.   See Becker v. Adams Drug Co., 819 F.2d 32 (2d Cir. 1987) (barring pro se plaintiff with history of bringing frivolous and vexations motions from filing

13

papers related to any matter until sanctions paid); Johl v. Johl, 788 F.2d 75, 75-76 (2d Cir. 1986) (finding appeal "frivolous and vexatious" and directing clerk of court to reject all papers from pro se plaintiff with history of such actions until all sanctions paid); Wrenn, 1991 WL 50083, at *3-4 (barring vexatious pro se plaintiff with history of having been sanctioned from filing any papers until sanctions paid). The court may take such measures as part of its "inherent power and . . . constitutional obligation to protect [its] jurisdiction from conduct which [impairs its] ability to carry out Article III functions." Wrenn, 1991 WL 50083, at *3 (quoting In re Martin-Trigona, 737 F.2d 1254, 1261 (2d Cir. 1984)).

Here, Mr. Fagan has been found to have engaged in misconduct in numerous cases and was most recently fined and sanctioned by Judge Scheindlin for actions taken in bad faith in the Kaprun case. In re Ski Train Fire, 2007 WL 2398697 at *3 n.29, *4-5, *6-7; Molefi v. Oppenheimer Trust, No. 03 Civ. 5631, 2007 WL 538547, at *2-4 (E.D.N.Y. Feb. 15, 2007); Association of Holocaust Victims for Restitution of Artwork and Masterpieces v. Bank Austria Creditanstalt AG, No. 04 Civ. 3600, 2005 WL 2001888, at *4-5 (S.D.N.Y. Aug. 19, 2005); Window Headquarters, Inc. v. Mat Basic Four, Inc., No. 91 Civ. 1816, 1996 WL 63046, at *1 (S.D.N.Y. Feb. 9, 1996) (sanctioning Mr. Fagan and requiring him to pay costs of opposing counsel defending meritless motion); Credit-Counseling Provision No Bar to Involuntary Bankruptcy Petitions, 185 N.J. Law J. 659, 660 (2006) (discussing malpractice finding against Mr. Fagan and pending ethics charges again him for improperly taking a

client's money).  He has failed to pay the most recent sanctions and fines, and indeed argues here that he should be allowed to proceed with his case against the defendants in order to recover money with which to satisfy these obligations.  (Plaintiffs' Memorandum of Law in Opposition to Motion to Stay Proceedings at 8).  While it could be problematic to stay an impoverished litigant's case until he pays his debt to the court where he requires an injunction to prevent an ongoing harm, <u>see, e.g.</u>, <u>Pettus v. Morgenthau</u>, 554 F.3d 293, 297-98 (2d Cir. 2009) (allowing prisoner who would be barred under Prisoner Litigation Reform Act's three strikes rule to seek remedy for imminent danger), the relief Mr. Fagan requests is largely monetary and can be addressed once the outstanding sanctions and fines have been settled.  Furthermore, the relief requested by the defendants in this action is less extreme than in the cases cited above; the defendants here request only that the case at hand be stayed until all sanctions are paid.

For these reasons, it is appropriate to say Mr. Fagan's claims until he has paid the sanctions and fines against him.

C.  <u>Stay Pending Admission of Attorney</u>

The moving defendants next submit that this case should be stayed until the plaintiffs are represented by counsel admitted to practice in this court.  At the time the motion was filed, Mr. Lowy was not licensed to practice law in New York and had not been admitted <u>pro</u> <u>hac</u> <u>vice</u> to represent the plaintiffs in this case.  Since then, this problem has been addressed.  On March 20, 2009,

Robert J. Pearl, an attorney admitted to practice in this court, submitted his Notice of Appearance on behalf of all the victims and family members of victims from the Kaprun incident who are plaintiffs in the current case. (Notice of Appearance dated March 20, 2009). Thereafter, Mr. Pearl filed a motion to admit Mr. Lowy pro hac vice as counsel for all the plaintiffs in this case other than Mr. Fagan (Amended Motion for Pro Hac Vice Admission filed April 8, 2009), and this motion was granted on April 23, 2009. (Order for Admission Pro Hac Vice dated April 23, 2009).

   D.   Stay Pending Evidence of Retention

   Finally, the moving defendants move to stay the current case until the court receives "sworn papers from each named plaintiff . . . indicating that [Mr. Lowy and Mr. Pearl] currently are authorized to represent the plaintiffs as counsel in this complaint."[10]  (Def. Memo. at 9).  The plaintiffs oppose any such requirement, but request that if the court imposes such a requirement, it require the defendants to provide similar documentation.

   The moving defendants argue that such sworn statements are necessary because, late in the Kaprun case, news reports indicated that some of the plaintiffs were not aware that they remained in the case; Judge Scheindlin then required verification of retention arrangements (Memorandum Endorsement dated May 18, 2007, attached as Exh. 8 to Bishop Decl.), and Mr. Lowy and Mr. Fagan never

---

   [10] I assume this request applies to all the plaintiffs except Mr. Fagan, since he is proceeding pro se.

complied.     (Reply  Memorandum  in  Support  of  Motion  to  Stay
Proceedings  and  Opposition  to  Cross  Motion  at  6).     However,  the
outcome  of  the  pending  appeal  may  dramatically  alter  the  universe
of  plaintiffs  and  claims  that  remain  in  the  current  case.     Until
that  appeal  is  decided,  there  is  no  need  to  impose  a  burden  on
parties  who  may  no  longer  be  in  this  case.     Accordingly,  the
defendants'  application  is  denied  without  prejudice  to  renewal
after  the  pending  appeal  has  been  decided.

      E.  <u>Mr. Fagan's Cross-Motion</u>

      Mr.  Fagan's  cross-motion  seeks  various  forms  of  relief,  the
essence  of  which  is  a  request  that  the  court  deny  the  defendants'
motion  to  stay  and  move  forward  with  this  case  expeditiously.     For
the  same  reasons  that  the  defendants'  motion  to  stay  is  granted  in
substantial  part,  Mr.  Fagan's  cross-motion  is  denied.

<u>Conclusion</u>

      For  the  reasons  discussed,  this  action  is  stayed  pending
appeal,  and  Mr.  Fagan's  claims  are  stayed  until  he  satisfies  all
outstanding  fines  and  sanctions  imposed  in  the  <u>Kaprun</u>  litigation.
The  defendants'  motion  to  stay  all  claims  until  the  plaintiffs  are
represented  by  proper  counsel  is  denied  as  moot.     Finally,  the
defendants'  motion  to  stay  until  all  plaintiffs  submit  sworn
representation  statements  is  denied  without  prejudice  to  renewal
once  the  pending  appeal  has  been  decided.     Plaintiff  Fagan's  cross-
motion  is  denied.

SO ORDERED.

*James C. Francis IV*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       May 19, 2009

Copies mailed this date:

Edward D. Fagan
10 Ferncliff Terrace
Short Hills, New Jersey 07078

James F. Lowy, Esq.
Lowy Royer Law Firm, LLC
3907 Henderson Boulevard, Suite 200
Tampa, Florida 33629

Robert J. Pearl, Esq.
The Pearl Law Firm, PA
141 Sully's Trail, Suite 1
Pittsford, New York 14534

Brant W. Bishop, P.C.
Kirkland & Ellis LLP
655 Fifteenth Street, NW
Suite 1200
Washington, DC 20005

Robert A. Weiner, Esq.
McDermott, Will & Emery LLP
340 Madison Avenue
New York, New York 10017

Stephen M. Harnik, Esq.
Harnik Wilker & Finkelstein LLP
645 Fifth Avenue, 7th Floor
New York, New York 10022

John F. Tully, Esq.
Fulbright & Jaworski, LLP
666 Fifth Avenue, 31st Floor
New York, New York 10103

Nancy Ledy-Gurren, Esq.
Ledy-Gurren Bass & Siff, LLP
475 Park Avenue South, 27th Floor
New York, New York 10016

18

Eileen T. McCabe, Esq.
Mendes & Mount, LLP
750 Seventh Avenue
New York, New York 10019

E. Gordon Haesloop, Esq.
Bartlett McDonough Bastone &
   Monoghan LLP
300 Old Country Road, Suite 301
Mineola, New York 11501

Efrat Menachemi, Esq.
Reed Smith LLP
599 Lexington Avenue, 22nd Floor
New York, New York 100222

Arnd N. von Waldow, Esq.
Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA 15219

Joseph A. Pantoja, Esq.
Assistant United States Attorney
86 Chambers Street - 3rd Floor
New York, New York   10007

Frederick W. Reif, Esq.
Debra Tama, Esq.
Biederman, Reif, Hoenig & Ruff, P.C.
570 Lexington Avenue
New York, New York 10022

Mark W. Smith, Esq.
Timothy A. Valliere, Esq.
Smith Valliere PLLC
509 Madison Avenue, 15th Floor
New York, New York 10022

19