UNITED STATES DISTRICT COURT                    (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
EDWARD D. FAGAN et al.,                         : 08 Civ. 6715 (LTS) (JCF)
                                                :
                Plaintiffs,                      :    MEMORANDUM OPINION
                                                :        AND ORDER
        - against -                             :
                                                :
REPUBLIC OF AUSTRIA et al.,                      :
                                                :
                Defendants.                      :
- - - - - - - - - - - - - - - - - - - -:
LAURA TAYLOR SWAIN,
UNITED STATES DISTRICT JUDGE

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 2 5 MAR 2011

    Plaintiffs Edward D. Fagan and James F. Lowy were formerly
attorneys for the plaintiffs in a related suit in this Court, In re
Ski Train Fire in Kaprun Austria on November 11, 2000, 01 MDL No.
1428 (the "Kaprun case"), which arose out of a fatal train fire on
November 11, 2000 in Kaprun, Austria.  They bring the instant case
against three Austrian companies, the Republic of Austria, and the
Austrian Kaprun Fire Disaster Conciliation Commission (the "Kaprun
Commission"), arguing that, in negotiating a global settlement in
Austria of all claims arising from the ski train fire, the
defendants committed a wide variety of wrongs against them,
including discriminating and retaliating against them for their
advocacy on behalf of victims, fraudulently inducing them to
participate in settlement negotiations, breaching agreements with
them, and converting, stealing, or depriving them of money that
they were owed for their work in the Kaprun case.  The three
corporate defendants have filed motions to dismiss the plaintiffs'
claims pursuant to rules 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6)
of the Federal Rules of Civil Procedure, and defendant

Copies mailed/faxed to  MR Fagan
Chambers of Judge Swain   3-25-11

Oesterreichische Elektrizitaetswirtschafts Aktiengesellschaft ("OE-AG") has further moved for sanctions against the plaintiffs pursuant to 28 U.S.C. § 1927 and for a permanent injunction barring the plaintiffs from any further filings related to the Kaprun case. For the reasons that follow, the defendants' motions to dismiss are granted and OE-AG's motions for sanctions and an injunction are denied. The plaintiffs have moved in turn for evidentiary hearings and other miscellaneous relief; those motions are denied.

Background

The plaintiffs' activities related to the November 11, 2000 Kaprun ski train fire have a long and complicated history; only those facts most relevant to the instant proceeding are summarized here. A more complete summary of the Kaprun case can be found in Judge Shira A. Scheindlin's Opinion and Order of June 19, 2007, dismissing the case, 499 F. Supp. 2d 437 (S.D.N.Y. 2007). A more detailed summary of Mr. Fagan's participation in the Kaprun case can be found in Judge Scheindlin's Opinion and Order of August 16, 2007, disqualifying Mr. Fagan from representing the plaintiffs in that case, 01 MDL No. 1428, 2007 WL 2398697 (S.D.N.Y. Aug. 16, 2007).

A. The Kaprun Case

In the aftermath of the November 11, 2000 ski train fire, Mr. Fagan undertook to represent a large number of the family members of individuals who died in the fire, as well as survivors of the fire and their families. (Second Amended Complaint ("2d Am. Compl."), ¶¶ 22, 23). According to Mr. Fagan, that representation included several forms of advocacy on behalf of his clients in

Austria.   (2d Am. Compl., ¶ 22).   Additionally, Mr. Fagan participated in the filing of a series of lawsuits in the United States, which were consolidated by the Judicial Panel on Multidistrict Litigation and assigned to the Honorable Shira A. Scheindlin in this Court.   2007 WL 2398697, at *1.   Judge Scheindlin issued a series of opinions granting motions to dismiss made by various defendants in those lawsuits on the basis of personal jurisdiction, see, e.g., In re Ski Train Fire in Kaprun, Austria on November 11, 2000, No. MDL No. 1428, 230 F. Supp. 2d 376 (S.D.N.Y. 2002); 230 F. Supp. 2d 403 (S.D.N.Y. 2002); 257 F. Supp. 2d 648 (S.D.N.Y. 2003);  2003 WL 1807148 (S.D.N.Y. April 4, 2003); 257 F. Supp. 2d 717 (S.D.N.Y. 2003); 2003 WL 22909153 (S.D.N.Y. Dec. 9, 2003); 343 F. Supp. 2d 208 (S.D.N.Y. 2004); 342 F. Supp. 2d 207 (S.D.N.Y. 2004); 2004 WL 2674644 (S.D.N.Y. Nov. 23, 2004), and foreign sovereign immunity pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-1611, see, e.g., 178 F. Supp. 2d 367 (S.D.N.Y. 2001); cf. 198 F. Supp. 2d 420 (S.D.N.Y. 2002) (denying sovereign immunity to corporation 45% owned by holding company that was itself 51% owned by Austrian government). In particular, Judge Scheindlin found that defendant OE-AG was a foreign state under the definition of the FSIA, and therefore immune from suit in the United States.   178 F. Supp. 2d at 373, 379-80.   She also found that defendant Gletscherbahnen Kaprun Aktiengesellschaft ("GBK") was not subject to personal jurisdiction in this Court because, among other reasons, it was not "doing business" in the state of New York.   2003 WL 22909153, at *2-3. Although Judge Scheindlin refused to dismiss the claims brought by

relatives of American victims of the ski train fire on the basis of
forum non conveniens, 230 F. Supp. 2d at 386-91, she dismissed all
of the claims brought by foreign plaintiffs on that ground, finding
that there were strong indicators that the plaintiffs were forum
shopping and that public and private convenience factors weighed
strongly in favor of litigating the case in Austria.  499 F. Supp.
2d at 444-52.

      Although all of the claims Mr. Fagan brought on behalf of
foreign victims and survivors of the ski train fire had been
dismissed, Mr. Fagan persisted with the claims of the American
victims until August 16, 2007, when he was removed from the case by
Judge Scheindlin, who determined that Mr. Fagan's personal
bankruptcy had created an impermissible conflict of interest
between himself and his clients.  2007 WL 2398697 at *1-5.  Judge
Scheindlin also sanctioned Mr. Fagan at that time in the amount of
$5,000 for making false representations to the court and to
opposing counsel.  Id. at *6-7.  Subsequently, Judge Scheindlin
awarded several defendants in the Kaprun case $44,797.56 in fees
and costs related to the time and effort expended as a result of
Mr. Fagan's misrepresentations.   (Order dated Nov. 26, 2007,
attached as Exh. 8 to Declaration of Charles G. Moerdler dated Aug.
16, 2010 ("Moerdler Decl.")).  However, Judge Scheindlin elected
not to sanction the other plaintiffs' attorneys who had by then
entered the case, including Mr. Lowy, because most of the
objectionable conduct had been Mr. Fagan's.  2007 WL 2398697 at *8.
Those attorneys continued to represent the American victim
plaintiffs until those plaintiffs joined in a global settlement of

the case in Austria in July 2008.  (2d Am. Compl., ¶¶ 61, 68, 69, 73, 75).

    B.   <u>The Kaprun Commission Settlement</u>

The Republic of Austria established the Kaprun Commission following the ski train fire in order to investigate the causes of the disaster and recommend changes to Austrian safety standards based on its findings.  (2d Am. Compl., ¶ 34).  By 2004, the Kaprun Commission had been given the additional task of mediating a settlement between the survivors and victims' families and the various defendants who were facing legal action as a result of the disaster.  (2d Am. Compl., ¶ 35).  Mr. Fagan and Mr. Lowy allege that they were included in these negotiations from their commencement in 2004 until 2008, and that during these negotiations they were promised attorney's fees and expenses in exchange for their representation of survivors and victims' families.  (2d Am. Compl., ¶¶ 37, 38-42, 58, 63, 71, 72, 76, 77; General Declaration of Plaintiff Edward D. Fagan in Opposition to Defendants' Motions to Dismiss dated Nov. 3, 2010 ("Fagan Decl."), ¶ 19; Supplemental Declaration of Plaintiff Edward D. Fagan in Opposition to Defendant Verbund's Motion to Dismiss (Doc. # 131) and in Support of Plaintiff Fagan's Cross Motion dated Nov. 3, 2010 ("Fagan OE-AG Supp. Decl."), ¶ 27; Declaration of Robert J. Pearl in Support of Motion to Fix and Enforce an Attorneys [sic] Charging Lien Pursuant to New York Judicary Law §475 dated July 16, 2008 ("Pearl Decl."), attached as part of Exh. 17 to Moerdler Decl., ¶ 6).

On June 12, 2008, the Austrian government, GBK, and Generali Versicherung Aktiengesellschaft ("Generali AG") reached a global

settlement in Austria of all claims arising out of the ski train fire, pursuant to which those three entities paid a large number of survivors and victims' families $21.5 million.  (William J. Kole, <u>Settlement Reached in Austria Cable Car Deaths</u>, Associated Press, June 17, 2008, attached as Exh. 3 to Complaint ("Compl."); 2d Am. Compl., ¶ 60; Pearl Decl., ¶ 11).  The plaintiffs also allege that, shortly thereafter, the American victims' families entered into a supplemental settlement worth between $2.5 million and $5 million, in exchange for which they agreed not to pursue any further litigation related to the ski train fire, including litigation in U.S. courts.  (2d Am. Compl., ¶ 61, Pearl Decl., ¶ 11).  In spite of any alleged promises, the Kaprun Commission made no provision for payment of attorney's fees or expenses to the plaintiffs as an element of the settlement.  (Fagan Decl., ¶ 14; 2d Am. Compl., ¶¶ 47-49).

C.   <u>Attempts to Recover Attorney's Fees</u>

Following the discovery that a settlement had been reached without any provision for their attorney's fees, Mr. Lowy and the other lawyer still representing the plaintiffs in the <u>Kaprun</u> case notified the defendants in that case that they were asserting claims for attorneys' fees and costs against them, noting that although many of the defendants had not paid any money into the settlement fund, they were "receiving a global release from the plaintiffs, our former clients, and now share[] responsibility for attorneys fees owed to plaintiffs' counsel."  (Letter from James F. Lowy dated May 31, 2008, attached as part of Exh. B to Pearl Decl., at 3).  The <u>Kaprun</u> case defendants' attorneys objected vociferously

to this assertion. (Letter of Brant W. Bishop dated June 6, 2008; Letter of Robert A. Weiner dated June 4, 2008; Letter of Nancy Ledy Gurren dated June 6, 2008; Letter of Charles G. Moerdler dated June 4, 2008; Letter of Eileen T. McCabe dated June 16, 2008; Letter of E. Gordon Haesloop dated June 11, 2008, all attached as Exh. C to Pearl Decl.). Nonetheless, Mr. Lowy subsequently obtained counsel and moved to enforce a lien for attorney's fees against the defendants in the <u>Kaprun</u> case pursuant to New York Judiciary Law § 475. (Motion to Fix and Enforce an Attorneys [sic] Charging Lien Pursuant to New York Judiciary Law §475 dated July 16, 2008, attached as part of Exh. 17 to Moerdler Decl.; Pearl Decl., ¶ 1). Mr. Fagan also applied to the court for attorney's fees and expenses, and appeared to contest the motion filed by Mr. Lowy. (Notice of Motion (i) for Attorneys Fees & Reimbursement of Expenses, (ii) for Recusal Pursuant to 28 U.S.C. § 455(a) and (iii) for other Relief dated July 25, 2008, attached as Exh. 3 to Fagan Decl.; Notice of Filing of Limited Letter Opposition/Request for Miscellaneous Relief by Edward D. Fagan to July 16, 2008 Motions of James Lowy and Robert Hantman to Fix Attorneys' Charging Lien pursuant to New York Judiciary Law § 475 dated July 17, 2008 ("Fagan Fees Motion"), attached as part of Exh. 18 to Moerdler Decl.; Letter of Edward D. Fagan dated July 17, 2008, attached as Exh. 1 to Fagan Fees Motion).

On August 1, 2008, Judge Scheindlin denied the plaintiffs' motions for attorney's fees and costs arising out of the <u>Kaprun</u> case. (Order dated Aug. 1, 2008 ("8/1/08 Order"), attached as Exh. 20 to Moerdler Decl.). Judge Scheindlin acknowledged that she had

the authority to exercise ancillary jurisdiction over a fees claim although the <u>Kaprun</u> case had been dismissed on the grounds of forum non conveniens, <u>see</u> <u>Chesley v. Union Carbide Corp.</u>, 927 F.2d 60, 65-66 (2d Cir. 1991), but she declined, "[i]n the interests of judicial economy, fairness, convenience, and significantly, comity," to exercise jurisdiction over funds from the settlement reached with the Kaprun Commission.  (8/1/08 Order at 2-4).  She noted that Second Circuit precedent made exercise of such jurisdiction discretionary and that exercising jurisdiction over a claim for attorney's fees arising from a settlement fund "on deposit in a foreign country" was heavily disfavored.  (8/1/08 Order at 3).  Finally, Judge Scheindlin observed that Mr. Fagan's fee claims arose "under agreements, to the extent they exist, between Fagan and former co-counsel" -- Mr. Lowy -- and thus that, in order to obtain such fees, Mr. Fagan would need to file suit against Mr. Lowy.  (8/1/08 Order at 4-5).

> D.   <u>The Instant Proceeding</u>

Even before Judge Scheindlin issued her Order denying the plaintiffs' claim for fees and costs, Mr. Fagan filed a complaint commencing the instant proceeding on July 28, 2008.  The complaint asserted claims for discrimination, retaliation, fraud, misrepresentation, deprivation of property rights, "Theft, Conversion, and/or Improper Release of Plaintiff's Monies Owed for Statutory Lien and Lien Based on Common Benefit & Catalyst Theory of Settlements" against all of the current defendants, and named only Mr. Fagan as plaintiff.  On October 15, 2008, Generali AG made a motion to dismiss that complaint under Rules 12(b)(2) and

12(b)(5) of the Federal Rules of Civil Procedure, contending that the court did not have personal jurisdiction over Generali AG and that the corporation had not properly been served with process. (Defendant Generali Versicherung AG's Memorandum of Law in Support of its Motion to Dismiss dated Oct. 14, 2008, at i; Notice of Motion dated Oct. 14, 2008).

Subsequently, on March 2, 2009, Mr. Fagan filed a First Amended Complaint, which added Mr. Lowy and forty-four victims' relatives and other interested parties as plaintiffs and added sixteen corporations, various alleged subsidiaries or alter egos, and the United States District Court for the Southern District of New York as defendants.   (First Amended Complaint ("1st Am. Compl.")).   The Amended Complaint alleged a wide variety of legal wrongs in addition to those listed in the first complaint, including "due process & civil rights violations" under 42 U.S.C. § 1983, the District Court's "violation of canons of judicial conduct," abuse of process, tortious interference, common law fraud, rescission, negligence, and violation of a purported "First Amendment right to judicial documents."   (1st Am. Compl. at 6-7). On March 18, 2009, newly-named defendants Bosch Rexroth Corporation, Cyalume Technologies Incorporated, Exxon Mobil Corporation, Hydac Technology Corporation, Siemens Corporation, and Wika Instrument Corporation made a motion to stay all proceedings in the case pending: (1) the Second Circuit's resolution of the appeal from Judge Scheindlin's dismissal of the Kaprun case on the grounds of forum non conveniens; (2) Mr. Fagan's satisfaction of the fines and sanctions entered against him during the Kaprun case;

and (3) the filing by any plaintiffs (aside from Mr. Fagan) intending to remain in the case of sworn statements indicating that they have authorized a "properly admitted member of the bar of the Southern District of New York" to appear on their behalf. (Notice of Motion to Stay Proceedings dated March 18, 2009). On March 19, 2009, Magistrate Judge James C. Francis IV temporarily stayed the case (Memorandum Endorsement dated March 19, 2009), and on April 23, 2009, Judge Francis denied Generali AG's first motion to dismiss without prejudice to its renewal following a final determination of the motion to stay (Order dated April 23, 2009). On May 19, 2009, Judge Francis granted the defendants' motion to stay the case pending the resolution of the appeal to the Second Circuit and the satisfaction of all fines and sanctions owed by Mr. Fagan in the Kaprun case. (Memorandum and Order dated May 19, 2009 at 12, 15).

On December 21, 2009, the Second Circuit issued a summary order affirming Judge Scheindlin's dismissal of the foreign plaintiffs' claims in the Kaprun case on the ground of forum non conveniens. Geier v. Omniglow Corp., 357 Fed. Appx. 377 (2d Cir. 2009). Following the Second Circuit's determination, the case sat inactive until May 12, 2010, when Judge Francis ordered that, by June 2, 2010, the plaintiffs file a Second Amended Complaint, stating clearly which claims they still intended to pursue and which defendants had been served with process, and provide signed affidavits or retainers demonstrating the authority of counsel to represent each plaintiff that remained in the case. (Order dated May 12, 2010). In response, the plaintiffs voluntarily dismissed

their complaint with respect to nine of the defendants that had been added in the First Amended Complaint, and Mr. Lowy and Mr. Pearl moved to withdraw as counsel for all of the named plaintiffs, who they indicated had retained new counsel and "no longer desire[d]" to be represented by Mr. Lowy and Mr. Pearl. (Motion to Withdraw as Counsel of Record for Plaintiffs dated May 28, 2010). That motion was granted, and all plaintiffs except Mr. Fagan were ordered to appear by new counsel or indicate their intent to proceed pro se by July 15, 2010; otherwise, their claims would be dismissed. (Order dated June 3, 2010). Attorneys appearing on behalf of these plaintiffs were further ordered to provide both a notice of appearance and a signed affidavit or retainer letter from each plaintiff "attesting that the plaintiff has engaged the attorney to represent him or her in this action." (Order dated June 3, 2010).

On July 6, 2010, Mr. Fagan and Mr. Lowy submitted the Second Amended Complaint ("2d Am. Compl."), which is the subject of the instant motions. The Second Amended Complaint reduced the number of named plaintiffs to only Mr. Fagan and Mr. Lowy and reduced the number of defendants to only five: the currently moving defendants, the Republic of Austria, and the Kaprun Commission.

On July 15, 2010, Joy Hochstadt filed a Notice of Appearance, purportedly on behalf of 160 plaintiffs, to which she attached a retainer agreement signed by Dr. Gerhard Podovsovnik, "Austrian lawyer and holder of full powers of attorney (including the right to give sub-power of attorney to US lawyers)" for 160 individuals named in the agreement. (Kaprun Disaster November 11th 2000

Referral Agreement and Power of Attorney, both attached to Notice of Appearance dated July 15, 2010).   On September 27, 2010, Ms. Hochstadt filed a new Notice of Appearance that was accompanied by individual signed retainers for 92 plaintiffs.   (Notice of Appearance dated Sept. 27, 2010).   Ms. Hochstadt subsequently filed several requests for extensions of time to file papers on behalf of these clients, and to have their papers sealed from Mr. Fagan and Mr. Lowy; although the requested extensions were granted, Ms. Hochstadt did not serve any papers prior to the expiration of the final deadline.   (Memorandum Endorsement dated Oct. 4, 2010; Memorandum Endorsement dated Oct. 18, 2010).

On August 16, 2010, OE-AG, GBK, and Generali AG filed the instant motions to dismiss along with supporting declarations, exhibits, and memoranda.   In response, Mr. Fagan filed a series of motions, including motions for limited jurisdictional and forum non conveniens discovery, for oral argument and evidentiary hearings "to resolve disputed factual issues related to the Motions to Dismiss," to strike OE-AG's reply memorandum of law in support of their motion to dismiss, for leave to file a sur-reply, and for a partial lifting of the May 19, 2009 stay.[1]   (Docket entries nos. 156, 170, 171, 174, 180).   On Monday, March 7, 2011, Mr. Fagan submitted a letter indicating that he intended to withdraw the

---

[1] In general, courts read a pro se litigant's pleadings liberally, interpreting them "to raise the strongest arguments that they suggest."   McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). However, when a pro se plaintiff is an experienced attorney like Mr. Fagan, "the Court is not obligated to read his pleadings liberally."   Heller v. Emanuel, No. 07 Civ. 1393, 2007 WL 1491081, at *2 (E.D.N.Y. May 21, 2007) (collecting cases).

motion for a partial lifting of the stay.   (Letter of Edward D. Fagan dated March 7, 2011).

Discussion

      A.   Foreign Sovereign Immunities Act

Defendant OE-AG argues that the Second Amended complaint should be dismissed because, among numerous other reasons, this Court lacks subject matter jurisdiction because OE-AG is a "foreign state" as that term is defined by the FSIA, and therefore is immune from suit.   (Memorandum of Law of Oesterreichische Elektrizitaetswirtschafts AG in Support of its Motion to Dismiss the Second Amended Complaint, Motion for Sanctions, and Motion for a Permanent Injunction ("OE-AG Memo.") at 14-15).   The plaintiffs suggest that exceptions to FSIA immunity apply and that OE-AG is therefore susceptible to suit.   (2d Am. Compl., ¶ 1; Memorandum in Support of Plaintiff Edward D. Fagan's Motion to Strike, for Leave to File a Sur-Reply and for Other Relief ("Motion to Strike Memo.") at 4 n.2).   The plaintiffs also argue that limited discovery should be allowed, in aid of the resolution of factual issues related to OE-AG's sovereign immunity.   (Fagan Decl., ¶ 7(c)).

"The district court's review of the evidence before it on a motion to dismiss based on an assertion of sovereign immunity has particular significance because of the necessity of resolving that issue early on if possible."   Robinson v. Government of Malaysia, 269 F.3d 133, 141 (2d Cir. 2001).   In considering a motion to dismiss on the basis of subject matter jurisdiction, "'the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits.'"   Filetech S.A.

v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998) (quoting
Antares Aircraft, L.P. v. Federal Republic of Nigeria, 948 F.2d 90,
96 (2d Cir. 1991)).  Indeed, "if resolution of a proffered factual
issue may result in the dismissal of the complaint for want of
jurisdiction," the court must refer to such proffered evidence.
Robinson, 269 F.3d at 141 n.6.

   1. Legal Standard

  The FSIA "'is the sole source for subject matter jurisdiction
over any action against a foreign state.'"  Capital Ventures
International v. Republic of Argentina, 552 F.3d 289, 293 (2d Cir.
2009) (quoting Kensington International Ltd. v. Itoua, 505 F.3d
147, 153 (2d Cir. 2007)).  The FSIA creates original jurisdiction
in the federal courts over "any nonjury civil action against a
foreign state," but holds that "a foreign state shall be immune
from the jurisdiction of the courts of the U.S. and of the States"
except when certain enumerated exceptions apply.   28 U.S.C.
§ 1330(a), 1604.  The FSIA defines a "foreign state" to "include[]
a political subdivision of a foreign state or an agency or
instrumentality of a foreign state," defining the latter category
to include "any entity . . . a majority of whose shares or other
ownership interest is owned by a foreign state or political
subdivision thereof." 28 U.S.C. § 1603; see also, e.g., Karaha
Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,
313 F.3d 70, 75 (2d Cir. 2002); Rogers v. Petroleo Brasileiro,
S.A., No. 09 Civ. 8227, 2010 WL 3768158, at *3-4 (S.D.N.Y. Sept.
27, 2010).  Foreign state status is to "be determined at the time
suit is filed."  Dole Food Co. v. Patrickson, 538 U.S. 468, 478

(2003).  While the initial burden of a prima facie showing is on a
defendant seeking immunity, once that showing has been made, the
"burden then shifts to the plaintiff to present evidence showing
that an exception to the FSIA applies."  Matar v. Dichter, 563 F.3d
9, 12 (2d Cir. 2009).

### a.   Commercial Activity Exception

28 U.S.C. § 1605 provides for several exceptions to the
jurisdictional immunity of a foreign state, including an exception
covering

> any case . . . (2) in which the action is based upon a
> commercial activity carried on in the United States by
> the foreign state; or upon an act performed in the United
> States in connection with a commercial activity of the
> foreign state elsewhere; or upon an act outside the
> territory of the United States in connection with a
> commercial activity of the foreign state elsewhere and
> that act causes a direct effect in the United States.

§ 1605(a)(2).  The statute defines "commercial activity" to mean
"either a regular course of commercial conduct or a particular
commercial transaction or act" and provides that "[t]he commercial
character of an activity shall be determined by reference to the
nature of the course of conduct or particular transaction or act,
rather than by reference to its purpose."  § 1603(d).  To determine
whether an activity is commercial for the purposes of the FSIA,
"courts should 'inquire whether the activity in question is one
which private parties ordinarily perform or whether it is
peculiarly within the realm of governments.'"  Rogers, 2010 WL
3768158, at *5 (quoting Braka v. Bancomer, S.A., 589 F. Supp. 1465,
1469 (S.D.N.Y. 1984)); see also Republic of Argentina v. Weltover,
Inc., 504 U.S. 607, 614-15 (1992); Kato v. Ishihara, 360 F.3d 106,
111 (2d Cir. 2004).

Of the three clauses that provide grounds for applying the commercial activity exception, the first clause applies not when the foreign state "generally engages in commercial activity in the United States," but when "the particular conduct giving rise to the claim is a part of commercial activity having substantial contact with the United States." Shapiro v. Republic of Bolivia, 930 F.2d 1013, 1018 (2d Cir. 1991); accord Rogers, 2010 WL 3768158, at *5; § 1603(e). The "substantial contact" standard requires "a tighter nexus than the 'minimum contacts' standard for due process," and "is intended to reflect a degree of contact beyond that occasioned simply by U.S. citizenship or U.S. residence of the plaintiff," Zedan v. Kingdom of Saudi Arabia, 849 F.2d 1511, 1513 (D.C. Cir. 1988) (quoting H.R. Rep. No. 94-1487, at 17 (1976)); accord Rogers, 2010 WL 3768158, at *5. The second clause generally applies "'to non-commercial acts in the United States that relate to commercial acts abroad.'" Rogers, 2010 WL 3768158, at *6 (quoting Kensington, 505 F.3d at 157). The third clause applies when an activity's effect in the United States "follows 'as an immediate consequence of the defendant's . . . activity,'" in other words where "between the foreign state's commercial activity and the effect, there was no 'intervening element.'" Guirlando v. T.C. Ziraat Bankasi A.S., 602 F.3d 69, 74 (2d Cir. 2010) (quoting Weltover, 504 U.S. at 618 and Weltover, Inc. v. Republic of Argentina, 941 F.2d 145, 152 (2d Cir. 1991)). The location of that direct effect -- within the United States or without -- is determined by reference to the location of the effect of "legally significant acts;" "the mere fact that a foreign state's commercial activity outside of the

United States caused physical or financial injury to a United States citizen is not itself sufficient to constitute a direct effect in the United States." <u>Guirlando</u>, 602 F.3d at 76-79 (internal citations and quotation marks omitted).

b.   <u>Takings Exception</u>

28 U.S.C. § 1605(a)(3) provides that a foreign state is not immune from suit concerning property that has been taken in violation of international law.   "To establish subject matter jurisdiction pursuant to the 'takings' exception of the FSIA, a plaintiff must demonstrate each of four elements: (1) that rights in property are at issue; (2) that the property was 'taken'; (3) that the taking was in violation of international law; and [](4)[] 'that property . . . is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States[.]'" <u>Garb v. Republic of Poland</u>, 440 F.3d 579, 588 (2d Cir. 2006) (quoting 28 U.S.C. § 1605(a)(3)).   "[F]or purpose of the expropriations exception to the FSIA, the 'property taken . . . means physical property [and] not the right to receive payment.'" <u>Daventree Ltd. v. Republic of Azerbaijan</u>, 349 F. Supp. 2d 736, 749-50 (S.D.N.Y. 2004) (quoting <u>Lord Day & Lord v. Socialist Republic of Vietnam</u>, 134 F. Supp. 2d 549, 560 (S.D.N.Y. 2001)).

c.   <u>Tort Exception</u>

Finally, the plaintiffs assert that OE-AG is not entitled to sovereign immunity because this is a case where "money damages are sought against a foreign state for . . . damage to or loss of property, occurring in the United States and caused by the tortious

act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment." 28 U.S.C. § 1605(a)(5); (Supplemental Declaration of Plaintiff Edward D. Fagan in Opposition to Defendant Verbund's Motion to Dismiss (Doc # 131) and in Support of Plaintiff Fagan's Cross Motion dated Nov. 3, 2010 ("Fagan OE-AG Supp. Decl."), ¶ 17).[2] In determining whether this exception applies, a district court must first "determine what the relevant activities" of the foreign state were and then "decide whether those acts were tortious" under the law that would apply to the claim. <u>Robinson</u>, 269 F.3d at 142. However, this exception to sovereign immunity does not apply to "any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." § 1605(a)(5)(B). If an "action is properly characterized as a taking rather than a tort, it is not cognizable under section 1605(a)(5)." <u>Chuidian v. Philippine National Bank</u>, 912 F.2d 1095, 1105 (9th Cir. 1990), <u>abrogated on other grounds by</u> <u>Samantar</u>, __ U.S. __, 130 S.Ct. 2278. Furthermore, "the tortious activity exception is limited 'to those cases in which the damage to or loss of property occurs in the United States.'" <u>Swarna v. Al-Awadi</u>, 622 F.3d 123, 144 (2d Cir.

---

[2] The plaintiffs also appear to suggest that OE-AG is not shielded by sovereign immunity to the extent that OE-AG "and its officers, jointly and individually as members of The Kaprun Commission, have engaged in specific acts." (Fagan OE-AG Supp. Decl., ¶ 18). Although the plaintiffs are correct that the FSIA shields only foreign states and not foreign officials, <u>see</u> <u>Samantar v. Yousuf</u>, 130 S. Ct. 2278, 2292 (2010); <u>accord</u> <u>Carpenter v. Republic of Chile</u>, 610 F.3d 776, 780 (2d Cir. 2010), there are no individual named defendants in this case. The plaintiffs have only sued OE-AG itself; OE-AG is clearly a foreign state meriting the protections of the FSIA.

2010) (quoting Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 439 (1989)).

### 2.   Application to OE-AG

In this case, OE-AG is unequivocally a foreign state as that term is defined by the FSIA because it is an "agency or instrumentality" of the Republic of Austria, which owns 51% of the shares of OE-AG. (Declaration of Otto Dietrich dated Aug. 16, 2010 ("Dietrich Decl."), ¶ 3); accord 178 F. Supp. 2d at 373. Indeed, the plaintiffs do not contest OE-AG is a foreign state as defined by the FSIA. (2d Am. Compl., ¶ 1). Therefore, OE-AG benefits from sovereign immunity unless an exception applies.

### a.   Commercial Activity Exception

The threshold question in determining whether the commercial activity exception to sovereign immunity, 28 U.S.C. § 1605(a)(2), applies to OE-AG is whether the foreign state is engaged in a commercial activity that forms the basis of the claim; only after that question is answered can locus and nexus to the claim and to the United States be evaluated. The activities in which OE-AG was engaged that undergird the plaintiffs' broadly worded allegations of wrongdoing were the negotiations, investigations, and other interactions that surrounded the settlement of the Kaprun case.[3]

_____

[3] To the extent that some of the plaintiffs' allegations do implicate other activities besides settlement and settlement discussions and negotiations, these activities -- which include "[i]nitiation of false investigations," "[i]nterference with Plaintiff Fagan's freedoms of speech and association," and making/releasing "false reports to authorities and the media" -- are not specifically pled but appear to be "peculiarly within the realm of governments," and thus non-commercial in nature. (2d Am. Compl., ¶¶ 33(a), (b), (c)); see also Rogers, 2010 WL 3768158, at *5.

Participation in settlement of a legal claim is not "peculiarly within the realm of governments," but rather is an activity "which private parties ordinarily perform." See Rogers, 2010 WL 3768158, at *5; Lord Day & Lord, 134 F. Supp. 2d at 559 ("[I]nitiation and settlement of commercial litigation may be a 'commercial activity' within the meaning of the statute."); Caribbean Trading and Fidelity Corp. v. Nigerian National Petroleum Co., No. 90 Civ. 4169, 1993 WL 541236, at *7-8 (S.D.N.Y. Dec. 28, 1993)("An act of settlement such as the one at issue here is an action commonly performed by private parties engaging in trade or commerce."). Indeed, numerous private parties were engaged in the settlement process and in the final settlement, along with OE-AG and other government entities.  Thus, to the extent that OE-AG participated in the Kaprun Commission settlement process, as the plaintiffs have alleged, it was engaged in commercial activity.

However, in order for the commercial activity exception to apply, that activity must also have some nexus with the United States.  See 28 U.S.C. § 1605(a)(2).  The plaintiffs allege that their agreements with the defendants regarding settlement were "to be substantially performed in the United States" and that those agreements "were the result of discussions, negotiations and communications, including via emails, sent into this jurisdiction by Defendants or their agents."   (Fagan Decl., ¶¶ 27, 28). § 1605(a)(2) requires more.

The first clause applies only when "the action is based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2).  The Kaprun Commission

settlement was signed in Austria, and there is no evidence that any of the negotiations took place in the United States except to the extent that some e-mails reached New York by virtue of the plaintiffs' presence here.  In order to establish a nexus under this clause, there must be "a degree of contact beyond that occasioned simply by U.S. citizenship or U.S. residence of the plaintiff."  Zedan, 849 F.2d at 1513.  OE-AG has not carried on relevant commercial activity in the United States, and therefore this clause does not apply.

The second clause applies to a claim that is based "upon act performed in the United States in connection with a commercial activity of the foreign state elsewhere."  § 1605(a)(2).  This clause requires a "sufficient connection" between the acts in the United States and the commercial activity in a foreign state that the suit is based upon.  Anglo-Iberia Underwriting Management Co. v. Lodderhose, No. 97 Civ. 0084, 2008 WL 190364, at *2 n.6 (S.D.N.Y. Jan. 22, 2008), aff'd sub nom, Anglo-Iberia Underwriting Management Co. v. P.T. Jamsostek, 600 F.3d 171, 177 (2d Cir. 2010) (labeling U.S. activities "purely incidental" to commercial activities underlying action).  The plaintiffs' claims here are "based upon" activities conducted in Austria, which created some incidental contacts with the United States by virtue of the plaintiffs' receipt of electronic communications in the United States.  See Anglo-Iberia Underwriting Management Co., 2008 WL 190364, at *2 n.6.  Therefore, the second clause of the exception is also inapplicable.

Neither do the plaintiffs' allegations meet the standard under

the third clause, which provides an exception for foreign activity causing a "direct effect" in the United States.   See § 1605(a)(2) (applying commercial activity exception to any claim based "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States").   The legally significant acts in this case -- the signing of a settlement and the communications and negotiations that led to that settlement -- all took place in Austria.   The plaintiffs allege two types of "direct effect" in the United States.   The first, that communications were "sent into this jurisdiction by Defendants or their agents," had effect in the United States only by virtue of the fact that a U.S. citizen received these communications and is alleged to have suffered injury as a result of the settlement. (Fagan Decl., ¶ 28); see also Guirlando, 602 F.3d at 78.   The second, the "dropping or dismissal of claims" was indeed "to be substantially performed in the United States."   (Fagan Decl., ¶ 27).   However, although the agreement by settling parties not to bring any related lawsuits in U.S. courts and to withdraw any such pending lawsuits is a legally significant act that might be characterized as having a direct effect in the United States, the plaintiffs' claims are not "based upon" this element of the settlement.   Their claims are instead based upon the attorneys' fees agreements (or lack thereof) within the settlement; the U.S. claims in the Kaprun case belonged to the plaintiffs in that case, not to Mr. Fagan and Mr. Lowy.   See In re Artha Management, Inc., 91 F.3d 326, 328 (2d Cir. 1996) ("It is axiomatic that the decision

to settle a case rests with the client."); (<u>see also</u> Fagan Decl., ¶¶ 27, 46-49, 51, 62, 77, 81-83, 93-94, 100-01, 103, 108-11, 119-20; <u>cf.</u> Fagan Decl., ¶¶ 94, 102).

Thus, although the plaintiffs' claims are based on commercial activity, that activity took place entirely in Austria.  The only effects of this activity felt in the United States were side effects of the plaintiffs' U.S. citizenship and residence.  The commercial activity exception to immunity under the FSIA therefore does not apply.

b.   <u>Takings Exception</u>

Four requirements must be met in order to demonstrate that the takings exception, § 1605(a)(3), applies to a claim against an agency or instrumentality of a foreign state: "(1) that rights in property are at issue; (2) that the property was 'taken'; (3) that the taking was in violation of international law; and [](4)[] 'that property . . . is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States[.]'" <u>Garb</u>, 440 F.3d at 588 (quoting § 1605(a)(3)).   This exception is plainly inapplicable because the "property" that the plaintiffs allege was misappropriated was their right to receive attorneys' fees and expenses, and not physical property as required under the FSIA. (2d Am. Compl., ¶¶ 110-11, 117); <u>see also</u> <u>Daventree Ltd.</u>, 349 F. Supp. 2d at 749-50.

c.   <u>Tort Exception</u>

Whether or not the plaintiffs have properly alleged a tortious act by OE-AG that might be sufficient to engage this exception, the

"loss of property" that forms the basis of the plaintiffs' claims did not occur in the United States, and the exception is therefore inapplicable.   See <u>Swarna</u>, 622 F.3d at 144.   Indeed, "Congress' primary purpose in enacting § 1605(a)(5) was to eliminate a foreign state's immunity for traffic accidents and other torts committed in the United States, for which liability is imposed under domestic tort law."   <u>Amerada Hess Shipping Corp.</u>, 488 U.S. at 439-40; <u>accord</u> <u>Cabiri v. Government of Republic of Ghana</u>, 165 F.3d 193, 200 (2d Cir. 1999) ("Although cast in terms that may be read to require that only the injury rather than the tortious acts occur in the United States, the Supreme Court has held that this exception 'covers only torts occurring within the territorial jurisdiction of the United States.'" (quoting <u>Amerada Hess Shipping Corp.</u>, 488 U.S. at 441)).   Even if the plaintiffs experienced the injuries resulting from their claims in the United States, all of the potentially tortious conduct of OE-AG occurred in Austria.

This exception to the FSIA is therefore also unavailing and, because OE-AG is a foreign state and the plaintiffs have not established the applicability of any of the FSIA's exceptions, OE-AG's motion to dismiss for lack of subject matter jurisdiction is granted.

B.   <u>Personal Jurisdiction</u>

Defendants GBK and Generali AG argue that the Second Amended Complaint should be dismissed because, among other reasons, this Court does not have personal jurisdiction over them.   (Defendant Gletscherbahnen Kaprun AG's Memorandum of Law in Support of its Motion to Dismiss ("GBK Memo.") at 9-17; Defendant Generali

Versicherung AG's Memorandum of Law in Support of its Motion to Dismiss ("Generali AG Memo.") at 10-18). In response, the plaintiffs have alleged a number of jurisdictional facts to establish both general and specific personal jurisdiction over these two defendants (Fagan Decl., ¶ 25, Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss Based Upon Alledge [sic] Lack of Jurisdiction ("Pl. Jurisdiction Memo.") at 2-4), and argue that limited discovery should be allowed in order to discover or resolve disputes over further jurisdictional facts (Fagan Decl., ¶ 7(b), 8; Pl. Jurisdiction Memo. at 11).

The "plaintiff ultimately 'bears the burden of establishing jurisdiction over the defendant by a preponderance of the evidence,'" but "'need only make a prima facie showing that jurisdiction exists prior to the holding of an evidentiary hearing.'" Capitol Records, LLC v. VideoEgg, Inc., 611 F. Supp. 2d 349, 356 (S.D.N.Y. 2009) (quoting Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 196 (2d Cir. 1990)). "In deciding a motion to dismiss for lack of personal jurisdiction, the court has discretion to proceed either upon written submissions or through a full evidentiary hearing on the merits," but without a hearing or jurisdictional discovery, "the pleadings and affidavits are construed, and any ambiguity is resolved, in favor of the plaintiff." Taylor Devices, Inc. v. Walbridge Aldinger Co., 538 F. Supp. 2d 560, 575 (W.D.N.Y. 2008) (internal citations omitted).

### 1. Legal Standard

In order to determine whether it has personal jurisdiction over a party, the court conducts "a two-part inquiry": "[f]irst, it

must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." Metropolitan Life Insurance Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996). If a court determines that there is no jurisdiction pursuant to state law, it need not conduct a due process analysis. Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208-09 (2d Cir. 2001). Further, since the New York long-arm statute "does not reach as far as the constitution permits, if a defendant is amenable to long-arm jurisdiction in New York, the constitutional standard is satisfied." Vasquez v. Torres Negron, 434 F. Supp. 2d 199, 201 (S.D.N.Y. 2006).

### a.   General Jurisdiction

The plaintiffs contend that the defendants are subject to general personal jurisdiction under Section 301 of New York Civil Practice Laws and Rules, which subjects a foreign corporation to general personal jurisdiction if it is "doing business" in the state. (2d Am. Compl., ¶ 3); Xiu Feng Li v. Hock, 371 Fed. Appx. 171, 174 (2d Cir. 2010) (citing Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000)). A corporation meets this requirement if it "does business in New York not occasionally or casually, but with a fair measure of permanence and continuity," id. (quoting Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985)) (internal quotation marks omitted), or in other words "engage[s] in continuous, permanent, and substantial activity in New York," Wiwa, 226 F.3d at 95 (quoting Landoil

Resources Corp. v. Alexander & Alexander Services, Inc., 918 F.2d 1039, 1043 (2d Cir. 1990)) (internal quotation marks omitted). "New York courts have focused on several factors to support a finding that a defendant was 'doing business,' including 'the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York.'" Xiu Feng Li, 371 Fed. Appx. at 174 (quoting Landoil Resources Corp., 918 F.2d at 1043). However, "contacts with the forum state should not be examined separately or in isolation. There is no talismanic significance to any one contact or set of contacts that a defendant may have with a forum state; courts should assess the defendant's contacts as a whole." Robertson-Ceco Corp., 84 F.3d at 570 (emphasis in original). Overall, the standard is "stringent" because the consequence of finding that a corporation is "doing business" in New York is to subject it to lawsuits in New York based on any claim, even one that bears no relationship to the forum. 2003 WL 22909153, at *2 (quoting Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG, 160 F. Supp. 2d 722, 731 (S.D.N.Y. 2001)).

### b.   Specific Jurisdiction

The plaintiffs also contend that the defendants are subject to specific personal jurisdiction pursuant to Section 302 of New York Civil Practice Law and Rules, which provides for the exercise of jurisdiction "over any non-domiciliary . . . who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2)

commits a tortious act within the state . . . ; or  (3) commits a tortious act without the state causing injury to person or property within the state . . . , if he (i) regularly does or solicits business, or engages in any other persistent course of conduct . . . ."  N.Y. CPLR § 302(a).

Under § 302(a)(1), a foreign party "transacts business" when he "'purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.'" Boehner v. Heise, 410 F. Supp. 2d 228, 236 (S.D.N.Y. 2006) (quoting CutCo Industries, Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986)).  Whether a defendant has purposefully availed himself of the forum state is determined by looking at the totality of the circumstances. Ross v. UKI Ltd., No. 02 Civ. 9297, 2004 WL 384885, at *4 (S.D.N.Y. March 1, 2004) (citing CutCo Industries, Inc., 806 F.2d at 365); see also Grimaldi v. Guinn, 72 A.D.3d 37, 45-46, 895 N.Y.S.2d 156, 163 (2d Dep't 2010) (noting that defendant need not be physically present in order to meet this standard, but that "nature and quality of the contacts" with forum state must be "substantial").  However, that is not the end of the inquiry; importantly, in order to invoke this source of personal jurisdiction, a plaintiff must make a claim that arises from -- or has a "'substantial relationship'" to -- the in-state transaction of business. Boehner, 410 F. Supp. 2d at 236; Ross, 2004 WL 384885, at *4 (quoting Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 198-99 (1988)).  "[T]he court must find 'some articulable nexus between the business transacted and the cause of action sued upon.'" Ross, 2004 WL

384885, at *4 (quoting <u>McGowan v. Smith</u>, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645 (1981)). Only one qualifying transaction need occur in New York in order for there to be jurisdiction, but "'the relationship between the activity and the claims presented by plaintiff [must be] sufficiently substantial and direct that [the defendant] could have foreseen the possibility that it might be haled into a New York court to defend itself.'" <u>Millennium, L.P. v. Dakota Imaging, Inc.</u>, No. 03 Civ. 1838, 2003 WL 22940488, at *3 (S.D.N.Y. Dec. 15, 2003) (alteration in original) (quoting <u>Pilates, Inc. v. Pilates Institute, Inc.</u>, 891 F. Supp. 175, 179 (S.D.N.Y. 1995)).

Section 302(a)(2) requires that the tortious act actually take place within the jurisdiction; "a defendant's physical presence in New York is a prerequisite to jurisdiction." <u>DirecTV Latin America, LLC v. Park, 610, LLC</u>, 691 F. Supp. 2d 405, 424-25 & n.5 (S.D.N.Y. 2010). It does not apply to communications made elsewhere but sent into the state. <u>Id.</u> at 425 ("[J]urisdiction under [§ 302(a)(2)] cannot be predicated on telephone calls made or letters mailed into this State." (quoting <u>Stein v. Annenberg Research Institute</u>, No. 90 Civ. 5224, 1991 WL 143400, at *3 (S.D.N.Y. July 19, 1991))).

Section 302(a)(3) requires a different showing; under that section, the "'situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff.'" <u>M & M Packaging, Inc. v. Kole</u>, 298 Fed. Appx. 39, 42 (2d Cir. 2008) (quoting <u>Whitaker</u>, 261 F.3d at 209). "There must be a more direct injury within the State

than the indirect financial loss resulting from the fact that the injured person resides or is domiciled here." <u>Bank of New York Mellon v. SACE S.p.A</u>, No. 10 Civ. 2510, 2011 WL 102728, at *3 (S.D.N.Y. Jan. 6, 2011) (quoting <u>Cooperstein v. Pan-Oceanic Marine, Inc.</u>, 124 A.D.2d 632, 633 (2d Dep't 1986)).[4]

        2.   <u>Application to GBK</u>

The plaintiffs allege in their complaint that the court has jurisdiction over GBK because it "has offices and/or agents through which it advertises and/or conducts business in New York City" and "otherwise does business and solicits and offers vacation and travel packages to customers and tourists within this judicial district, and does other business within this judicial district." (2d Am. Compl., ¶ 5).  They further allege in connection with these motions that GBK "maintains an interactive website, that is in English and through which it has thrust itself into NY and into the United States" and that GBK "markets and promotes" various ski travel packages through this website.  (Pl. Jurisdiction Memo. at 2-3).  The plaintiffs have made no factual proffers more specific than these.  GBK has filed declarations denying the existence of jurisdictional ties to this forum.

        a.   <u>General Jurisdiction</u>

The plaintiffs' attempts to establish general jurisdiction in New York over GBK fail.  First, not one of the relevant factors for establishing that GBK "engage[s] in continuous, permanent, and substantial activity in New York," <u>Wiwa</u>, 226 F.3d at 95, are

---

[4] The statute explicitly excludes claims for defamation as a basis for jurisdiction under this section.  <u>See</u> § 302(a)(2).

present in this case: GBK has no employees, offices, or bank
accounts in New York. (Präauer Decl., ¶¶ 9, 11, 13, 14; Buchner
Decl., ¶¶ 6-8, 10-13, 19-21); see also Xiu Feng Li, 371 Fed. Appx.
at 174. To the extent that GBK engages in any marketing activities
outside of Austria, those activities are directed toward the
European market; GBK does not engage in any solicitation activities
in New York. (Declaration in Support of Defendant Gletscherbahnen
Kaprun Aktiengesellschaft Motion to Dismiss the Complaint of Johann
Peter Präauer dated July 30, 2010 ("Präauer Decl."), ¶ 15;
Declaration in Support of Defendant Gletscherbahnen Kaprun
Aktiengesellschaft Motion to Dismiss the Complaint of Elfriede
Buchner dated July 30, 2010 ("Buchner Decl."), ¶¶ 6-8, 10-11, 20-
21); see also Landoil Resources Corp., 918 F.2d at 1043
("'Solicitation of business alone will not justify a finding of
corporate presence in New York with respect to a foreign
manufacturer or purveyor of services.'" (quoting Laufer v. Ostrow,
55 N.Y.2d 305, 310 (1982))); Del Medical Imaging Corp. v. CR Tech
USA, Inc., No. 08 Civ. 8556, 2010 WL 1487994, at *6 (S.D.N.Y. April
13, 2010) (finding no personal jurisdiction where no activity in
New York beyond "mere solicitation"); Savoleo v. Couples Hotel, 136
A.D.2d 692, 693, (2d Dep't 1988) ("[S]ince the defendant hotel has
done nothing more in New York than solicit business through
independent agents, it is unfair to require it to defend a lawsuit
in New York."). Although GBK does have an English-language
website, there is no indication that the website was directed to
New York, or even to the United States; the website quotes prices
in Euros and provides arrival information for travelers from

several cities, located exclusively in Europe.   (Buchner Decl.,
¶¶ 20-21); see also Holey Soles Holdings, Ltd. v. Foam Creations,
Inc., No. 05 Civ. 6939, 2006 WL 1147963, at *4 (S.D.N.Y. May 1,
2006) ("[T]he fact that a foreign corporation has a website
accessible to New York is insufficient to confer jurisdiction under
C.P.L.R. § 301 unless that website is purposefully directed towards
New York." (alteration in original) (quoting Freeplay Music, Inc.
v. Cox Radio, Inc., No. 04 Civ. 5238, 2005 WL 1500896, at *4
(S.D.N.Y. June 23, 2005)) (internal quotation marks omitted));
Kitzsteinhorn, The Glacier, http://en.kitzsteinhorn.at/.

Second, the plaintiffs' jurisdictional allegations with
respect to GBK are conclusory and, according to declarations
submitted by GBK employees, false.   See Robinson, 269 F.3d at 146
("[T]he conclusory nature of [the plaintiff]'s allegations alone
would give us pause before we would allow them to sustain
jurisdiction.").   Their attempts to rebut the jurisdictional
evidence put forth by GBK are similarly conclusory.   (Pl.
Jurisdiction Memo. at 2 ("Defendant GBK's protestations that it is
not subject to this Court's jurisdiction cannot be believed . . .
[and] are not supported by the evidence.").   Even resolving any
remaining ambiguities in the pleadings in favor of the plaintiffs,
they have not made a prima facie showing of general jurisdiction
over GBK.   Capitol Records, LLC, 611 F. Supp. 2d at 356.

Finally, in 2003 Judge Scheindlin found that substantially
similar jurisdictional allegations by the plaintiffs in the Kaprun
case did not establish that GBK was "doing business" in New York.
See 2003 WL 22909153, at *2-3.  Judge Scheindlin held that offering

promotional discounts and engaging in other marketing efforts aimed at New York did not rise to the level of "doing business" "absent some indication of frequency or volume," and noted that "this Court has repeatedly held [that] a defendant's website alone cannot form the basis for general jurisdiction in New York." 2003 WL 22909153, at *3.  On the record before this Court there is no indication that there have been any material changes since Judge Scheindlin's 2003 decision that would be relevant to the determination of the degree to which GBK is "doing business" in New York.  Judge Scheindlin's decision therefore indicates persuasively that exercising general jurisdiction over GBK in New York would be inappropriate.  (See Buchner Decl., ¶¶ 6-8, 12-13, 16-21; Präauer Decl., ¶¶ 10-14).

b.   Specific Jurisdiction

Although Judge Scheindlin also found an absence of specific jurisdiction over GBK under New York's long-arm statute in 2003, the plaintiffs here allege distinct tortious conduct on the part of GBK, which requires a fresh analysis.  Because the Second Amended Complaint cannot fairly be read to allege that GBK committed a tort within the forum state as required under § 302(a)(2), see DirecTV Latin America, LLC, 691 F. Supp. 2d at 425, this analysis will consider whether there is specific jurisdiction over GBK under the provisions of § 302(a)(1) or § 302(a)(3).

Jurisdiction under § 302(a)(1) requires a showing that, in the course of a transaction of business,[5] the defendant "purposefully

---

[5] Jurisdiction under this subsection may also be based on the defendant "contract[ing] anywhere to supply goods or services in the state." § 302(a)(1). Although the plaintiffs allege claims related to breach of contract, that purported contract arises out of representations about intended elements of the Kaprun Commission

availed" himself of the forum state, based upon consideration of a totality of the circumstances. See Ross, 2004 WL 384885, at *4. Further, it requires a showing that the claims asserted by the plaintiff bear a "substantial relationship to that transaction of business." Boehner, 410 F. Supp. 2d at 236.  To the extent that they can even be described as such, the only "business transactions" from which the plaintiffs' claims arise are the negotiations surrounding the Kaprun Commission settlement and the signing of that settlement.[6]  The settlement itself was formally negotiated and signed in Austria.    Although some of the communications related to these transactions made by GBK may have been received by the plaintiffs in the United States, this nexus is a far cry from the purposeful availment required by New York law. (Fagan Decl., ¶¶ 25, 27-28).  Even though, as Mr. Fagan correctly notes, there need only be one transaction of business that occurs within the forum state in order to establish long-arm jurisdiction, see Ehrenfeld v. Mahfouz, 489 F.3d 542, 548 (2d Cir. 2007), that single transaction must still be "purposeful," id. ("In addition, a single transaction in New York may suffice to invoke personal jurisdiction 'even though the defendant never enter[ed] New York, so long as the defendant's activities here were purposeful and

---

settlement and cannot be characterized as one "to supply goods or services" in New York.  (2d Am. Compl., ¶¶ 90-95, 99-105).

    [6] As discussed in the context of the FSIA, to the extent that the plaintiffs' allegations arise out of other actions by the defendants, such as "[i]nterference with . . . freedoms of speech and association," "[i]mproper release of false reports to media," "[i]nitiation of false investigations," and "[m]aking of false reports to authorities and the media," these actions are not properly characterized as business transactions.  (2d Am. Compl., ¶ 33(a)-(d)).  See supra note 3.

there is a substantial relationship between the transaction and the claim asserted.'" (alteration in original) (quoting <u>Kreutter</u>, 71 N.Y.2d at 467)); <u>Millennium, L.P.</u>, 2003 WL 22940488, at *3. There is simply no rational factual basis for a conclusion that, by communicating with American lawyers regarding ongoing settlement negotiations in Austria regarding a disaster that took place entirely in Austria, GBK "could have foreseen the possibility that it might be haled into a New York court to defend itself." <u>Id.</u> (quoting <u>Pilates, Inc.</u>, 891 F. Supp. at 179).[7]

Under § 302(a)(3), the plaintiff must allege an injury in the forum state, where that injury is deemed to have occurred in "the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff." <u>Kole</u>, 298 Fed. Appx. at 42. A simple financial loss to someone living within the forum state is not sufficient to demonstrate such injury. See <u>Bank of New York Mellon</u>, 2011 WL 102728, at *3. All of the events causing injuries to the plaintiffs in this case -- the signing of a settlement agreement that did not pay them attorneys' fees, purportedly tortious negotiations surrounding that

---

[7] Any suggestion by Mr. Fagan that the "dropping or dismissal" of U.S. claims, which was an element of the Kaprun Commission settlement, establishes a connection between the defendants and the forum state is inapposite because those claims belonged to the <u>Kaprun</u> case plaintiffs, and Mr. Fagan and Mr. Lowy therefore could not have contracted with the defendants to withdraw them. <u>See</u> <u>In re Artha Management, Inc.</u>, 91 F.3d at 328. Further, Mr. Fagan had been disqualified as counsel for the plaintiffs in that case nearly a year prior to the settlement, and as such could not have made any contracts or agreements related to the ongoing progress of that case. The claims of Mr. Fagan and Mr. Lowy thus do not bear a "sufficiently substantial and direct" relationship to any New York-related contract to establish specific jurisdiction. <u>See</u> <u>Millennium, L.P.</u>, 2003 WL 22940488, at *3.

agreement, and any "false investigations" of Mr. Fagan or "false reports" about him -- occurred in Austria, and were at most incidentally felt by them in the United States.  In fact, neither of the plaintiffs even resides in New York.  (2d Am. Compl., ¶¶ 9, 10).

The plaintiffs have thus failed to demonstrate that there is a proper basis for the exercise of specific jurisdiction over GBK, or even that GBK has "'minimum contacts'" with the state of New York such that jurisdiction in this state would not "'offend traditional notions of fair play and substantial justice.'" Association For Molecular Pathology v. U.S. Patent and Trademark Office, 669 F. Supp. 2d 365, 393 (S.D.N.Y. 2009) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). GBK's motion to dismiss the complaint for lack of personal jurisdiction is granted.

### 3.   Application to Generali AG

The plaintiffs argue that there is jurisdiction over defendant Generali AG because it "is part of The Generali Group which maintains offices in New York City . . . and maintains agents, representatives, employees, bank accounts, phones, faxes and/or other assets in this judicial district," that some of the company's advisory board members "are located" in New York, and that "Defendant Generali, its Foundation, its Bank and the companies in its group actively conduct and solicit business in the US, in NY, they have assets and investments in NY, they have bank accounts in NY, they are owned by NY entities, and they do in fact sell insurance and reinsurance products in the US and in NY through one

or more of its affiliated, owned or parent companies." (2d Am. Compl., ¶ 7; Fagan Decl., ¶ 8; Plaintiff's Memorandum of Law in Opposition to Defendant Generali Versicherung AG's Motion to Dismiss for Alleged Lack of Proper Service, Lack of Personal Jurisdiction and in Support of Plaintiff's Request for Miscellaneous Relief ("Pl. Generali AG Memo.") at 4).   In other words, the plaintiffs allege that Generali AG "(1) . . . engages in continuous and systematic business activities in NY directly and/or through one of the multitude of companies in which it has an ownership interest in NY or the corporate affiliates here; (2) Defendant transacts business here within the meaning of New York's long arm statute; (3) Defendant is owned by NY entities, (4) Defendant solicits business in NY, (5) Defendant has assets in NY, (6) Defendant specific [sic] contacts with Plaintiff in NY; and (7) Defendant engaged in specific acts that would case it to be subject to jurisdiction in NY." (Pl. Generali AG Memo. at 5-6).   Thus, the plaintiffs argue, there is jurisdiction over Generali AG under Sections 301 and 302 of New York Civil Practice Law and Rules, or at least they have asserted sufficient allegations to merit limited jurisdictional discovery and an evidentiary hearing. (Pl. Generali AG Memo. at 5-10).   As proof of these conclusory statements, the plaintiffs submit a smorgasbord of webpage printouts purporting to establish that Generali AG has at least minimum contacts with New York.   (Printouts, attached as Exh. 1 to Declaration of Edward Fagan in Opposition to Defendant Generali Versicherung AG's Motion to Dismiss for Alleged Lack of Proper Service, Lack of Personal Jurisdiction and in Support of Plaintiff's Request for

Miscellaneous Relief dated Dec. 1, 2008 ("Fagan Generali AG Decl.")).   Generali AG has proffered declarations explicating its activities and its relationship with its affiliates, and denying that it has contacts with New York sufficient to support this Court's exercise of general or specific jurisdiction.

a.   General Jurisdiction

The plaintiffs' arguments that Generali AG is "doing business" in New York "with a fair measure of permanence and continuity," see Xiu Feng Li, 371 Fed. Appx. at 174, depend on attribution to the defendant Generali AG, which is an Austrian corporation, of jurisdictional facts about Generali S.p.A., or the "Generali Group," of which Generali AG is the Austrian subsidiary.   (Pl. Generali AG Memo. at 7-8; Declaration of Dr. Nikolaus Mitterer in Support of Motion to Dismiss ("Mitterer Decl."), ¶¶ 4-5).   A court may exercise personal jurisdiction over a subsidiary based on its jurisdiction over the parent company only when the subsidiary is an "alter ego" or "mere department" of the parent company.   See GEM Advisors, Inc. v. Corporacion Sidenor, S.A., 667 F. Supp. 2d 308, 319 (S.D.N.Y. 2009); see also Drucker Cornell v. Assicurazioni Generali S.p.A. Consolidated, No. 97 Civ. 2262, 2000 WL 284222, at *3 (S.D.N.Y. March 16, 2000) ("Although this case is the converse of the ordinary one -- the entity allegedly doing business in New York . . . is the parent firm, and the foreign entity over which jurisdiction is sought . . . is its subsidiary -- both the mere department and the agency grounds for attribution may be applied.").   Four factors should be considered in determining whether a subsidiary and a parent are alter egos: "(1) whether

there exists common ownership and the presence of an interlocking directorate and executive staff, (2) the degree of financial dependency of the subsidiary on the parent, (3) the degree to which the parent interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities, and (4) the degree of the parent's control of the subsidiary's marketing and operational policies." Id. (citing Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120-22 (2d Cir.1984)). Although this is a "less stringent standard than that necessary to pierce the corporate veil for purposes of liability," GEM Advisors, Inc., 667 F. Supp. 2d at 319, "[a] parent cannot assume the jurisdictional status of its subsidiary unless factors beyond common ownership suggest that their separate corporate identities are a mere facade," Reers v. Deutsche Bahn AG, 320 F. Supp. 2d 140, 156 (S.D.N.Y. 2004). Instead, there must be a finding of "extraordinary control." Id. at 158.

The plaintiffs' evidentiary submissions and jurisdictional allegations are insufficient to make out a prima facie demonstration of the requisite degree of control. Indeed, they barely suffice to establish that there is common ownership between the Generali Group and Generali AG, let alone that the Generali Group exercises "extraordinary control" over Generali AG. (See, e.g., Generali, The Group, http://www.generaliusa.com/group.htm; Generali, Europe, http://www.generaliusa.com/europe.htm; Assicurazioni Generali, 2003 [Report], all attached as part of Exh. 1 to Fagan Generali AG Decl.). This is particularly so in light of

Generali AG's submission of sworn declarations proffering that, although Generali AG is a subsidiary of Generali S.p.A., Generali AG conducts its business independently, has a largely independent management and supervisory board governed by formal corporate by-laws, and "does not share profits with Generali S.p.A.," but rather is a "self-sustaining corporation." (Mitterer Decl., ¶¶ 3, 5, 13-20). Indeed, according to Generali AG, "Generali S.p.A. plays no role in the day-to-day creation of [Generali AG]'s marketing and operational policies." (Mitterer Decl., ¶ 13). See GEM Advisors, Inc., 667 F. Supp. 2d at 319.

The plaintiffs also rely on the fact that the Generali Group has other subsidiaries that are based in New York to support their argument that this Court has jurisdiction over Generali AG. (See, e.g., New York State Department of State, Division of Corporations, Entity Information: Generali Claims Solutions, LLC, attached as part of Exh. 2 to Fagan OE-AG Supp. Decl.; SDNY CM/ECF, Select A Person and assorted civil dockets, all attached as Exh. 3 to Fagan OE-AG Supp. Decl.; Generali, Generali US Branch, http://www.generaliusa.com; Assicurazioni Generali, 2003 [Report]; and Generali Group, About Us, Products and Services, United States, all attached as part of Exh. 1 to Fagan Generali AG Decl.). A court may not, however, "undertake 'a double piercing of the corporate veil'" in order to find personal jurisdiction "'by virtue of the existence of [a] sister subsidiary in New York.'" Basler Securitas Versicherungs-Aktiengesellschaft v. Panalpina Transportes Mundiales, S.A., No. 09 Civ. 4521, 2010 WL 4455858, at *4 (S.D.N.Y. Oct. 18, 2010) (alteration in original) (quoting Arrow Trading Co.

v. Sanyei Corp. (Hong Kong), 576 F. Supp. 67, 70 n.1 (S.D.N.Y. 1983)). Therefore, the plaintiffs' effort to establish jurisdiction over Generali AG on this basis is unavailing.

Finally, to the extent that the plaintiffs attempt to demonstrate that there is general jurisdiction over Generali AG because the company itself is "doing business" in New York, that effort fails. The plaintiffs allege Generali AG's physical presence in New York by virtue of the presence of the Generali Group in New York; as discussed above, this is not sufficient to establish that Generali AG has a physical presence here. (2d Am. Compl., ¶ 7; Pl. Generali AG Memo. at 7-8; Pl. Jurisdiction Memo. at 3). The plaintiffs also point to a number of websites that purportedly indicate some connection between various affiliates or subsidiaries of Generali AG and New York. (Pl. Generali AG Memo. at 2-3; The Austrian Generali Group, http://holding.generali.at; Generali Bank, assorted online forms; Generali Foundation, http://foundation.generali.at/index.php; e-flux, Generali Foundation, http://www.e-flux.com/shows/view/464, all attached as part of Exh. 1 to Fagan Generali AG Decl.). These connections are facially insufficient to demonstrate that Generali AG "engage[s] in continuous, permanent, and substantial activity in New York," Wiwa, 226 F.3d at 95, and are directly refuted by the sworn declarations submitted by Generali AG, which represent that Generali AG "has never conducted any business within the State of New York, either directly or through an agent," "does not employ any agents located within the State of New York," "has never had a bank account within the State of New York, and does not "hold itself out as doing

business within this state." (Mitterer Decl., ¶¶ 11-12). Finally, the fact that the majority owner of Generali AG is in part owned by an American company does not provide a proper basis for jurisdiction over Generali AG. See Schultz v. Safra National Bank of New York, 377 Fed. Appx. 101, 103 (2d Cir. 2010) (applying "mere department" test of personal jurisdiction in context of holding company); Taylor Devices, Inc. v. Walbridge Aldinger Co., 538 F. Supp. 2d 560, 576 (W.D.N.Y.2008) (same); (see also Mitterer Decl., ¶ 5, 7; Investors Mark Series Fund, Ex. 99.B13(C), attached as part of Exh. 1 to Fagan Generali Decl.; New York State Department of State, Division of Corporations, Entity Information: Transocean Holding Corporation, attached as part of Exh. 2 to Fagan OE-AG Supp. Decl.).

b.   Specific Jurisdiction

The plaintiffs do not differentiate the allegedly tortious actions of Generali AG from those of the other defendants.  As discussed above with respect to GBK, those tortious actions were not related to the transaction of business in the state, were not related to a contract to supply goods and services in the state, were not committed in the state, and did not cause injury within the state such that personal jurisdiction would be appropriate under New York's long-arm statute.  See N.Y. CPLR § 302(a). Therefore, the plaintiffs cannot establish specific personal jurisdiction over the defendant Generali AG, and Generali AG's motion to dismiss the complaint for lack of personal jurisdiction will be granted.

C.    Motion for a Permanent Injunction

Defendant OE-AG argues that Mr. Fagan should be permanently enjoined from filing any claims related to the Kaprun ski train incident.    (OE-AG Memo. at 38-39).    The Court is vested with the authority to enter a permanent injunction under 28 U.S.C. § 1651(a).    In determining whether a permanent injunction of this nature is warranted, a court will consider the following factors: "(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation . . . ; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties." Lipin v. National Union Insurance Fire Co., 202 F. Supp. 2d 126, 142 (S.D.N.Y. 2002) (quoting Safir v. United States Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986)).    "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." Safir, 792 F.2d at 24.

Defendants' request for a permanent injunction restricting future filings by Plaintiffs is denied.    The instant claims are not entirely duplicative of claims raised in the prior Kaprun case, and it cannot be said on this record that the plaintiffs' efforts here are so lacking in merit, good faith motivation, or legal basis as to be properly characterized as vexatious or harassing.

D.    Motion for Sanctions

OE-AG further argues that the plaintiffs should be sanctioned for the filing of "frivolous and harassing pleadings" related to the Kaprun case. (OE-AG Memo. at 35-37). While 28 U.S.C. § 1927 grants the Court the power to assess costs and attorney's fees against "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously," the Second Circuit has made clear that such sanctions are only "proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir. 1986). The Second Amended Complaint was filed in accordance with the instructions set forth in Judge Francis' May 12, 2010 Order and thus cannot be said to have been undertaken for such an improper purpose. (Docket entry no. 101). Accordingly, the motion for sanctions is denied.

E.    Plaintiffs' Remaining Arguments and Applications

In light of the foregoing disposition of the motions to dismiss the Second Amended Complaint, it is unnecessary for the Court to address the defendants' additional arguments concerning the merits of the plaintiffs' causes of action. The plaintiffs' motion for jurisdictional discovery and an evidentiary hearing regarding subject matter and personal jurisdiction is denied because they failed to meet their burden of proffering evidence to demonstrate even prima facie the existence of such jurisdiction. See Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 186 (2d Cir.

1998) ("Since the [plaintiffs] did not establish a prima facie case that the district court had jurisdiction over [the defendant], the district court did not err in denying discovery on that issue."). Their application for an evidentiary hearing concerning Defendants' forum non conveniens arguments and applications for preclusion of their lien claims and for a permanent injunction and sanctions is also denied; the Court declines to address the forum non conveniens arguments or the merits of the lien claims and has denied the injunction and sanctions applications.   Finally, the plaintiffs have withdrawn their motion for a partial lifting of the stay.[8]

Conclusion

For the foregoing reasons, the motions to dismiss of defendants OE-AG, GBK, and Generali AG (Docket entries nos. 131, 136, and 141) are granted.   Defendant OE-AG's motions for sanctions and for a permanent injunction (Docket entry no. 131) are denied. The plaintiffs' motions for limited discovery and an evidentiary hearing (Docket entries nos. 156, 170, 171, 174, and 180) are denied.   Any other plaintiffs named in the initial and First Amended complaints are also dismissed from the case without prejudice for failure to prosecute, based upon the failure to meet the July 15, 2010 deadline for submission of individualized affidavits or retainer letters indicating intent to proceed with new counsel and the failure to meet the October 27, 2010 deadline for filing of a new complaint.

Plaintiffs have, in addition, failed to proffer sufficient

---

[8] OE-AG's contention that Mr. Fagan's claims should be stayed pending his payment of preexisting sanctions and fines is thus rendered moot.   (OE-AG Memo. at 35).

explanation as to why they have not acted promptly to effectuate service of Defendant Republic of Austria ("Austria").  Plaintiffs' claims against Austria are, accordingly, dismissed without prejudice.  Plaintiffs' request that Defendant Vermittlungskommission Brandkatastrophe Kaprun ("The Kaprun Commission") be "dropped as a Defendant because they have ceased to exist" is granted, and the claims against The Kaprun Commission are hereby dismissed without prejudice.  Plaintiffs' March 23, 2011, request to amended further their complaint is denied.

The Clerk of the Court is respectfully directed to enter judgment dismissing the Second Amended Complaint and close this case.  This Memorandum Opinion and Order resolves docket entry nos. 131, 136, 141, 156, 170, 171, 174, and 180.

SO ORDERED.

LAURA TAYLOR SWAIN
UNITED STATES DISTRICT JUDGE

Dated:    New York, New York
          March 25, 2011

Copies mailed this date to:

Edward D. Fagan
10 Ferncliff Terrace
Short Hills, New Jersey 07078

James F. Lowy, Esq.
Lowy Royer Law Firm LLC
3907 Henderson Blvd., Suite 200
Tampa, FL 33629

Robert J. Pearl, Esq.
The Pearl Law Firm, PA
1159 Pittsford Victor Road, Suite 220
Pittsford, New York 14534

Robert A. Weiner, Esq.
McDermott Will & Emery LLP
340 Madison Avenue
New York, New York 10017

Stephen M. Harnik, Esq.
Harnik & Finkelstein LLP
645 Fifth Avenue, 7th Floor
New York, New York 10022

John F. Tully, Esq.
Fulbright & Jaworski, LLP
666 Fifth Avenue, 31st Floor
New York, New York 10103

Audrey Cumming, Esq.
Fulbright & Jaworski LLP
1301 McKinney, Suite 5100
Houston, TX 77010

Gregory T. Kenney, Esq.
Exxon Mobil Corporation
P.O. Box 2180
Room 15830
Houston, TX 77252

Brant W. Bishop, PC
Oreste P. McClung, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, NW
Suite 1200
Washington, DC 20005

Robert W. Littleton, Esq.
Littleton Joyce Ughetta Park & Kelly LLP
39 Broadway, 34th Floor
New York, New York 10006

Nancy Ledy-Gurren, Esq.
Ledy-Gurren Bass & Siff, LLP
475 Park Avenue South, 27th Floor
New York, New York 10016

Eileen T. McCabe, Esq.
Mendes & Mount, LLP
750 Seventh Avenue
New York, New York 10019

E. Gordon Haesloop, Esq.
Bartlett McDonough Bastone & Monoghan LLP
300 Old Country Road, Suite 301
Mineola, New York 11501

Efrat Menachemi, Esq.
Reed Smith LLP
599 Lexington Avenue, 22nd Floor
New York, New York 100222

Arnd N. Von Waldow, Esq.
Lisa Means, Esq.
Reed Smith, LLP
435 Sixth Avenue
Pittsburgh, PA 15219

Arthur J. Liederman, Esq.
Morrison Mahoney, LLP
17 State Street, Suite 1110
New York, New York 10004

Charles Moerdler, Esq.
Stroock, Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038

Joseph A. Pantoja, Esq.
Assistant United States Attorney
86 Chambers Street - 3rd Floor
New York, New York 10007

Mark W. Smith, Esq.
Timothy A. Valliere, Esq.
Smith Valliere & Martinez, PLLC
509 Madison Avenue - 15th Floor
New York, New York 10022

Frederick W. Reif, Esq.
Peter Hoenig, Esq.
Nicole Sullivan, Esq.
Biedermann, Reif, Hoenig & Ruff
570 Lexington Avenue
New York, New York 10022

John F. Sullivan III, Esq.
Audrey Hendricks, Esq.
Watt Beekworth, Esq.
Watt, Beckworth, Thompson & Henneman, LLP
1800 Louisiana Street
Houston, Texas 77002